#23973-a-MYREN, Circuit Judge
**2007 SD 73**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

TYRA HENDRIX,                             Plaintiff and Appellant,

    v.

KENNETH SCHULTE,                          Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE STUART L. TIEDE
Judge

* * * *

MICHAEL D. BORNITZ and
ONNA B. HOUCK of
Cutler & Donahoe, LLP                     Attorneys for plaintiff
Sioux Falls, South Dakota                 and appellant

DANIEL R. FRITZ and
NICOLE NACHTIGAL EMERSON of
Lynn, Jackson, Shultz & Lebrun, PC        Attorneys for defendant
Sioux Falls, South Dakota                 and appellee.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 20, 2007

OPINION FILED 7/18/07

#23973

MYREN, Circuit Judge

[¶1.]        Tyra Hendrix (Hendrix) appeals the circuit court's order granting summary judgment in favor of Robert Schulte (Schulte), her landlord.  We affirm.

FACTS AND PROCEDURAL HISTORY

[¶2.]        Schulte owned residential rental property in Minnehaha County.  Hendrix and her family rented a house from Schulte with assistance from the federal government's Section 8 housing program.  In March 2002 Hendrix fell while on the stairs in the house she rented from Schulte.

[¶3.]        The rental house was constructed in the 1930s.  There was no evidence that a building permit or permit for additions, alterations, or repairs was ever issued for the house.  There was no evidence that any additions, alterations, or repairs requiring a permit were ever undertaken on the house.

[¶4.]        The stairway did not have a handrail at the time Hendrix rented the property.  There was no evidence that the stairway had ever had a handrail.

[¶5.]        Hendrix sued Schulte based on her claim that he had a duty to "maintain the premises in a reasonably safe condition."  She alleged that he violated that duty by failing to install a handrail on the staircase.  She also alleged that failure to install a handrail was negligence per se because it "violated § R315.1 of the Residential Code" of the City of Sioux Falls.  She claimed that she fell on the stairs and suffered injuries as a result of Schulte's negligence.  Schulte denied the allegations.

[¶6.]        Schulte filed a motion for summary judgment with supporting affidavits.  Hendrix opposed the motion and filed opposing affidavits.  The circuit

court granted Schulte's motion for summary judgment. Hendrix filed a timely

appeal.

## STANDARD OF REVIEW

> Our standard of review on summary judgment requires this Court to determine whether the moving party has demonstrated the absence of any genuine issue of material fact and entitlement to judgment on the merits as a matter of law. SDCL 15-6-56(c). The circuit court's conclusions of law are reviewed de novo. Titus v. Chapman, 2004 SD 106, ¶13, 687 NW2d 918, 923 (citing Sherburn v. Patterson Farms, Inc., 1999 SD 47, ¶4, 593 NW2d 414, 416 (citing City of Colton v. Schwebach, 1997 SD 4, ¶8, 557 NW2d 769, 771)). However, all facts and favorable inferences from those facts must be viewed in a light most favorable to the nonmoving party. *Id.* (citing Morgan v. Baldwin, 450 NW2d 783, 785 (SD 1990)). We will affirm the circuit court's ruling on a motion for summary judgment when any basis exists to supports its ruling. Westfield Ins. Co., Inc. v. Rowe, 2001 SD 87, ¶4, 631 NW2d 175, 176 (citing Estate of Juhnke v. Marquardt, 2001 SD 26, ¶5, 623 NW2d 731, 732).

Weitzel v. Sioux Valley Heart Partners, 2006 SD 45, ¶16, 714 NW2d 884, 891.

## ANALYSIS

[¶7.]     "In order to prevail in a suit based on negligence, a plaintiff must prove duty, breach of that duty, proximate and factual causation, and actual injury." Fisher Sand & Gravel Co. v. South Dakota, 1997 SD 8, ¶12, 558 NW2d 864, 867. This case turns on the question of whether Schulte had any duty to protect Hendrix from injury. Kuehl v. Horner Lumber Co., 2004 SD 48, 678 NW2d 809. A duty can be created by statute or common law. *Id.*

[¶8.]     As a general rule, the existence of a duty is to be determined by the court. Erickson v. Lavielle, 368 NW2d 624 (SD 1985). Summary judgment in a

negligence case is appropriate when the trial judge resolves the duty question in the defendant's favor. *Id.*; Bland v. Davison County, 507 NW2d 80 (SD 1993).

### 1.    *Landlord duties under common law*

[¶9.]    The general rule under the common law is that the owner of a building who has leased that building to another, without any agreement to repair, is not liable to a tenant or to his invitees for injuries sustained by reason of its unsafe condition. Boe v. Healy, 84 SD 155, 168 NW2d 710 (1969).[1] Similarly, once a landlord has parted with full possession of the premises to the tenant, the general rule is that the landlord is not liable for injury to third persons caused by the tenant's negligence. Clauson v. Kempffer, 477 NW2d 257 (SD 1991). When setting forth that general rule in *Clauson,* this Court quoted approvingly from the Restatement (Second) of Torts § 355. This Court then discussed the various exceptions to that general rule that are itemized in the Restatement (Second) of Torts §§ 357-362. This Court has also applied other common law general rules and exceptions outlined in the Restatement (Second) of Torts. *See* Walther v. KPKA Meadowlands, Ltd., 1998 SD 78, 581 NW2d 527; Smith v. Lagow Construction & Developing Co., 2002 SD 37, 642 NW2d 187 (both cases dealing with landlords' duties to protect against unlawful acts of third parties).

[¶10.]    This Court has not specifically utilized the Restatement (Second) of Torts § 356 (1965) in any prior decisions. Section 356 explains that a "lessor of land

---

1.    In *Boe*, this Court noted that the general rule does not apply where the owner reserves control of a portion of the premises for use in common. This Court utilized the Restatement (Second) of Torts § 361 to explain the standard of care a landlord must apply to the portion of the property over which the landlord retains control. This case does not involve any allegations of the reservation of common areas.

is not liable to his lessee . . . for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession." After reviewing the case law, the circuit court correctly concluded that this Court would utilize § 356 in an appropriate case.

[¶11.] It was undisputed that the stairwell did not contain a handrail at the time Hendrix took possession, and that it was in the same condition when Hendrix fell. Under the analysis of the general rule in § 356, Schulte is not liable for a dangerous condition that existed when Hendrix took possession. However, the necessary analysis does not end with § 356. The harshness of that general rule is moderated in certain specific circumstances that are outlined in the exception sections, §§ 357-362.

[¶12.] Restatement (Second) of Torts § 357 (1965) provides one such exception. It reads:

> A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if:
>
> a. the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and
>
> b. the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and
>
> c. the lessor fails to exercise reasonable care to perform his contract.

[¶13.] The lease between Schulte and Hendrix provided:

> Owner shall respond in a reasonable time to calls by the Family for services consistent with the obligations under the Lease and maintain the dwelling unit, equipment, common areas, and facilities provided for the use and benefit of the Family in compliance with applicable Housing Quality Standards.

[¶14.] Section 357 contains a narrow exception to the general rule of non-liability. As such, it should be applied precisely. It does not impose a sweeping obligation upon a landlord to eliminate all potential dangers. Such an obligation would have the exception swallow the rule. Instead, it imposes liability only when there is a "*condition of disrepair*." The circuit court's decision correctly focused on this narrow language.

[¶15.] It was undisputed that no handrail had ever been installed in the stairway in question. Thus, there was no "disrepair." This was not a situation where a handrail was damaged and not repaired. This was a situation where a handrail was never installed. To require a landlord to install a handrail that never existed would take the exception beyond its limited scope.

[¶16.] Hendrix asks this Court to abandon the common law as outlined in its prior case law and the Restatement. Hendrix contends that this is necessary because public policy requires the Court to protect the interests of tenants who are in an unequal bargaining position with landlords. However, those concerns were the very purpose for the exceptions in §§ 357-362 as explained in the official comments to those sections.

[¶17.] Hendrix asks this Court to require all landlords to maintain all rental property in a reasonably safe condition regardless of possession. The public policy

concerns raised by Hendrix are already addressed by the exceptions set forth in the Restatement. We decline the invitation to abandon the common law formulations.

### 2. *Landlord duties under statute or ordinance*

> The violation of a statute or ordinance, designed for the benefit of individuals, is of itself sufficient to prove such a breach of duty as will sustain an action for negligence brought by a person within the protected class if other elements of negligence concur. The statute or ordinance becomes the standard of care or the rule of the ordinarily careful and prudent person.

McCleod v. Tri-State Milling Co., 71 SD 362, 366-367, 24 NW2d 485, 487 (1946). *See also*, Alley v. Siepman, 87 SD 670, 214 NW2d 7 (1974); Albers v. Ottenbacher, 79 SD 637, 116 NW2d 529 (1962).

[¶18.] Hendrix claimed numerous sources of statutory duty before the circuit court. In its memorandum decision the circuit court addressed each of her claimed sources of duty. Hendrix has not asked this Court to review the circuit court's decisions regarding all of the potential sources of statutory duty that she raised. Instead, she has asked this Court to consider only two of those potential sources of statutory duty. We will confine our review to those two sources.

[¶19.] First, Hendrix contends that her lease with Schulte obligated him to bring his property into compliance with the federal regulations regarding the Section 8 program. The actual language of that lease is quoted earlier in this decision. The lease required him to "make repairs necessary to maintain" the property in compliance with "applicable Housing Quality Standards."

[¶20.] The "Housing Quality Standards" are set forth at 24 CFR § 982.401. Each rental property must meet "performance requirements" and "acceptability

criteria." Stairs are covered under subsection (g) which relates to "Structure and materials." The "performance requirements" explain that:

> [t]he dwelling unit must be structurally sound. The structure must not present any threat to the health and safety of the occupants and must protect the occupants from the environment.

The "acceptability criteria" explain that:

> [t]he condition and equipment of interior and exterior stairs, halls, porches, walkways, etc., must not present a danger of tripping and falling. For example, broken or missing steps or loose boards are unacceptable.

[¶21.] Rick Kruse inspected the house on January 11, 2002, less than two months before Hendrix's accident. Kruse is an evaluator with the Sioux Falls Housing and Redevelopment Commission, the federal government's Section 8 inspector. In an inspection letter provided to both Schulte and Hendrix, Kruse determined that the house "*was found to meet HUD's Housing Quality Standards.*" (emphasis added). His letter included a list of three items "you should be aware of." Item number two was, "repair, or replace, the second floor stairs handrail." Schulte was not required to address the items on the list in order for the property to meet the Housing Quality Standards. Instead, the inspection form noted that those comments were intended to:

> (a) establish the precondition of the unit, (b) indicate possible additional areas to negotiate with the owner, (c) aid in assessing the reasonableness of the rent of the unit, and (d) aid the tenant in deciding among possible units to be rented. The tenant is responsible for deciding whether he or she finds these conditions acceptable.

[¶22.] If stairs were broken, Schulte was obligated to replace them. If a handrail was broken or removed, Schulte was obligated to replace it. Neither the

"performance requirements" nor the "acceptability criteria" required Schulte to install a handrail where one had never existed.

[¶23.] Second, Hendrix relies on a Sioux Falls ordinance that adopted the International Residential Code (IRC). By its own terms, existing structures need not comply with the IRC except under very specific circumstances. Section R102.7 of the IRC provides:

> The legal occupancy of any structure existing on the date of adoption of this code shall be permitted to continue without change, except as specifically covered in this code, the *International Property Maintenance Code* or the *International Fire Code, or as is deemed necessary by the building official* for the general safety and welfare of the occupants and the public. (emphasis added).

Section R102.7.1 of the IRC reads:

> Additions, alterations, or repairs to any structure shall conform to that required for a new structure without requiring the existing structure to comply with all of the requirements of this code, unless otherwise stated.

[¶24.] It was undisputed that this house was constructed in the 1930s. There was no evidence of any permit for additions, alterations, or repairs at any point in time. There was no evidence that tended to show that the house had ever been subject to any additions, alterations, or repairs that would have triggered IRC § R102.7.1.

[¶25.] Section R103.1 of the IRC defines "building official" as the official in charge of the department of building safety for the City of Sioux Falls. That person was Ron Bell. There was no evidence that Ron Bell, or anyone working for him, ever inspected the house or received any complaints about the house. There was no

evidence that Ron Bell, or anyone working for him, ever "deemed it necessary" for Schulte to bring this house into compliance with the requirements of the IRC.

[¶26.] There were no material issues of fact in dispute regarding duty. Based on the undisputed facts, the circuit court correctly concluded that Hendrix did not establish any statutory or common law duty that required Schulte to install a handrail where none had been previously installed.

[¶27.] We affirm.

[¶28.] GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, concur.

[¶29.] MYREN, Circuit Judge, for SABERS, Justice, disqualified.

[¶30.] ZINTER, Justice, disqualified.