#27317-a-LSW

**2015 S.D. 99**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STACEY ZERFAS,                                    Plaintiff and Appellant,

    v.

AMCO INSURANCE COMPANY,
a Nationwide Company,                             Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE STUART L. TIEDE
Retired Judge

* * * *

SEAMUS W. CULHANE
NANCY J. TURBAK BERRY of
Turbak Law Office, P.C.
Watertown, South Dakota                          Attorneys for plaintiff
                                                 and appellant.


KENT R. CUTLER
KIMBERLY R. WASSINK
BRIAN DONAHOE of
Cutler & Donahoe, LLP
Sioux Falls, South Dakota                        Attorneys for defendant
                                                 and appellee.

* * * *

ARGUED ON
OCTOBER 5, 2015

OPINION FILED **12/16/15**

#27317

WILBUR, Justice

[¶1.]     David Zerfas lost control of his vehicle after he swerved to avoid a deer carcass in his lane of travel on the interstate.  His vehicle was hit by oncoming traffic and Zerfas died.  His wife Stacey sought uninsured motorist benefits with AMCO Insurance Company.  She claimed that an unidentified driver negligently left the deer carcass in the lane of travel on the interstate, which negligence caused Zerfas to lose control of his vehicle.  AMCO denied her claim after it concluded that Stacey would not legally be entitled to recover damages from the unidentified driver.  Stacey brought suit against AMCO for breach of contract, and AMCO moved for summary judgment.  After a hearing, the circuit court granted AMCO summary judgment.  It ruled that AMCO's policy coverage was not implicated because, under the facts of this case, the unidentified driver owed no common law or statutory duty to Zerfas.  Stacey appeals.  We affirm.

## Background

[¶2.]     On December 2, 2011, at approximately 6:23 a.m., David Zerfas was traveling south on Interstate 29 from Brookings to Sioux Falls, South Dakota.  He lost control of his vehicle, swerved, and crossed the median into oncoming traffic.  Zerfas's vehicle was struck by oncoming traffic and he was fatally injured.  The South Dakota Highway Patrol issued an accident report noting that "[t]here were remains of a deer in the south bound lanes where tire marks show Vehicle 1 [Zerfas] swerved left and lost control."  The summary of the investigation detailed that "Vehicle 2 [driven by Mark Misar] was traveling north bound when Vehicle 1 came into the right lane. . . .  Vehicle 2 struck Vehicle 1 in the driver's side doors."

-1-

According to the investigation report, "Vehicle 1 left tire marks from the southbound lanes into the median where the vehicle was partially sideways. The tire marks go thru the median and marks show where the tires hit the paved median shoulder and spun the vehicle into the north bound lanes." Misar reported his speed to be 70 mph prior to locking his brakes to avoid the collision. The report did not indicate a speed for Zerfas's vehicle.

[¶3.] After the accident, Zerfas's wife Stacey filed a claim with their automobile insurance company, AMCO Insurance Company, for uninsured motorist benefits. Stacey informed AMCO that the circumstances of the accident implicated AMCO's coverage for damage caused by an unidentified hit-and-run driver. In particular, Stacey claimed that at some point prior to the accident an unidentified driver hit the deer and negligently failed to ensure that the deer carcass did not create a hazard to other travelers on the road.

[¶4.] AMCO investigated Stacey's claim. It interviewed two witnesses: Mark Misar (the driver of the vehicle that collided with Zerfas's vehicle) and Harriet Greene (a passenger in a vehicle behind Misar's vehicle). Although neither Misar nor Greene saw Zerfas swerve to avoid the deer carcass, Greene reported that after the accident she saw a deer carcass from across the median and noticed other cars maneuver to avoid it. AMCO did not inspect Zerfas's vehicle, but did review the accident investigation report.

[¶5.] AMCO's investigation produced no evidence revealing how the deer carcass came to be in Zerfas's lane of travel. Nonetheless, AMCO's claim notes indicate that it assumed for purposes of the claim that a deer carcass was in fact

lying in the roadway when Zerfas lost control of his vehicle. The notes further suggest that the circumstances of the accident could implicate the policy definition of an "uninsured vehicle." However, the claim note qualified that policy coverage depended on whether the accident "was caused by the negligence of the unidentified vehicle leaving the deer in the roadway or the [insured's] negligence for lookout and failure to maintain control[.]"

[¶6.] Ultimately, AMCO denied Stacey's claim. It informed Stacey that coverage was not implicated because, even assuming an unidentified driver hit the deer and left the carcass in Zerfas's lane of travel, Stacey would not legally be entitled to recover damages from the unidentified driver of the vehicle. AMCO explained that, based on its research of state law and common law in South Dakota, the mere fact that an individual hits a deer and kills it does not create a duty to remove it from the roadway or to warn motorists that the remains exist in the roadway. AMCO informed Stacey that it also denied her claim because Stacey failed to present competent evidence that the accident was in fact caused by an unidentified driver and not that Zerfas himself hit the deer.

[¶7.] In October 2012, Stacey brought a breach of contract action against AMCO for its failure and refusal to pay uninsured motorist benefits as a result of Zerfas's accident. Stacey asserted that AMCO had an obligation under the terms of the insurance contract to pay uninsured motorist benefits for Zerfas's death because she would be legally entitled to recover damages from the unidentified driver who negligently left a deer carcass in the lane of travel. AMCO moved for summary judgment, and the circuit court held a hearing. At the conclusion of the hearing, the

court orally granted AMCO's motion. It found no basis under the facts to support that the unidentified driver had a legal duty to Zerfas to remove the carcass or warn of its existence. The court issued an order granting AMCO summary judgment. Stacey appeals and we restate the issue as follows:

> Did the circuit court err when it granted AMCO summary judgment because the unidentified hit-and-run driver did not owe Zerfas a legal duty?

## Standard of Review

[¶8.] We determine whether summary judgment was proper by reviewing "whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Millea v. Erickson*, 2014 S.D. 34, ¶ 9, 849 N.W.2d 272, 275 (quoting *Andrushchenko v. Silchuk*, 2008 S.D. 8, ¶ 8, 744 N.W.2d 850, 854). "All facts and favorable inferences from those facts must be viewed in a light most favorable to the nonmoving party." *Andrushchenko*, 2008 S.D. 8, ¶ 8, 744 N.W.2d at 854 (quoting *Hendrix v. Schulte*, 2007 SD 73, ¶ 6, 736 N.W.2d 845, 847). In this negligence action, summary judgment is proper if no duty exists as a matter of law. *Millea*, 2014 S.D. 34, ¶ 9, 849 N.W.2d at 275. Whether "a duty [exists] is a question of law that is reviewed de novo." *Id.*

## Analysis

[¶9.] AMCO's insurance policy provides that AMCO "will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury[.]'" It is undisputed that Stacey is an "insured" under the policy. The policy defines an "'[u]ninsured motor

vehicle'" to include "a hit-and-run vehicle whose operator or owner cannot be identified and which hits or causes an accident resulting in 'bodily injury' without hitting[.]" For purposes of this appeal, we assume that a driver, other than Zerfas, hit the deer and that the driver cannot be identified. We further assume that the presence of the deer carcass in Zerfas's lane of travel caused him to swerve, lose control of his vehicle, and be struck by oncoming traffic. Based on these assumptions, the vehicle driven by the unidentified driver meets AMCO's policy definition of an "uninsured motor vehicle." The question remains whether Stacey would be legally entitled to recover damages from the unidentified driver.

[¶10.] To be legally entitled to recover from the unidentified driver, there must exist a duty between the unidentified driver and Zerfas. *See Johnson v. Hayman & Assocs., Inc.*, 2015 S.D. 63, ¶ 13, 867 N.W.2d 698, 702; *Millea*, 2014 S.D. 34, ¶ 11, 849 N.W.2d at 275-76. This is because "[t]he existence of a duty owed by the defendant to the plaintiff, which requires the defendant to conform to a certain standard of conduct in order to protect the plaintiff against unreasonable risks, is elemental to a negligence action." *Erickson v. Lavielle*, 368 N.W.2d 624, 626 (S.D. 1985). A duty can arise out of common law or statute. *Millea*, 2014 S.D. 34, ¶ 12, 849 N.W.2d at 276. However, a duty depends on "whether a 'relationship exists between the parties such that the law will impose upon the defendant a legal obligation of reasonable conduct for the benefit of the plaintiff.'" *First Am. Bank & Tr., N.A. v. Farmers State Bank*, 2008 S.D. 83, ¶ 16, 756 N.W.2d 19, 26 (quoting *Casillas v. Schubauer*, 2006 S.D. 42, ¶ 14, 714 N.W.2d 84, 88).

[¶11.]     According to Stacey, the circuit court erred as a matter of law when it refused to recognize a specific duty between the unidentified driver and Zerfas based on the well-established law that every driver in South Dakota has a legal duty to exercise ordinary care at all times when using a public highway so as to avoid putting others in danger. Stacey declares that "[t]here is one simple question that determines whether this common legal duty applies to the undisputed facts of this case: was the hit-and-run driver using a public highway?" In her view, because "[t]he answer to that question is plainly yes[,]" the unidentified driver owed Zerfas a duty.

[¶12.]     We disagree. One's broad duty to exercise ordinary care at all times to avoid placing another at risk of physical injury "does not define the circumstances under which the law imposes a duty on an alleged tort-feasor." *See Millea*, 2014 S.D. 34, ¶ 13, 849 N.W.2d at 276 (quoting *Poelstra v. Basin Elec. Power Coop.*, 1996 S.D. 36, ¶ 13, 545 N.W.2d 823, 826). It simply recognizes the right of an injured person to recover for another's negligence. *Id.* The existence, scope, and range of a duty, on the other hand, depend upon the foreseeability of the risk of harm. *Johnson*, 2015 S.D. 63, ¶ 13, 867 N.W.2d at 702; *Hamilton v. Sommers*, 2014 S.D. 76, ¶ 22, 855 N.W.2d 855, 862; *Poelstra*, 1996 S.D. 36, ¶ 16, 545 N.W.2d at 826.

[¶13.]     Here, Stacey claims that it was foreseeable to the unidentified driver that others (including Zerfas) would be at risk of injury from the presence of a deer carcass in the lane of travel. Because a risk of injury was foreseeable, Stacey argues that a duty exists and a *jury must decide* whether the duty was breached when the unidentified driver left "a carcass in the driving lane of an interstate

before dawn without doing anything[.]" Stacey's argument confuses the concepts of foreseeability of harm as it relates to the element of causation and foreseeability of harm relevant to the element of duty. We have recognized that the concepts are often confused in tort law. *See Peterson v. Spink Elec. Coop., Inc.*, 1998 S.D. 60, ¶ 15, 578 N.W.2d 589, 592 (quoting *Poelstra*, 1996 S.D. 36, ¶ 18, 545 N.W.2d at 827) ("foreseeability for purposes of establishing a duty is not invariably the same as the foreseeability relevant to causation").

[¶14.]     As to causation, foreseeability is a fact question and is examined at the time the damage was done. *Id.* By contrast, "foreseeability in defining the boundaries of a duty is always a question of law" and is examined at the time the act or omission occurred. *Johnson*, 2015 S.D. 63, ¶ 13, 867 N.W.2d at 702 (quoting *Braun v. New Hope Twp.*, 2002 S.D. 67, ¶ 9, 646 N.W.2d 737, 740); *Hamilton*, 2014 S.D. 76, ¶ 22, 855 N.W.2d at 862. To determine whether a duty exists, we examine "the facts as they appeared at the time, and not by a judgment from actual consequences which were not then to be apprehended by a prudent and competent man." *Peterson*, 1998 S.D. 60, ¶ 15, 578 N.W.2d at 592 (quoting 57A Am. Jur. 2d *Negligence* § 125, Westlaw (database updated November 2015)).

[¶15.]     The question we must decide, therefore, is whether the act of leaving a carcass on the driving lane of the interstate created a foreseeable risk of injury "such that the law will impose upon the defendant a legal obligation of reasonable conduct for the benefit of the plaintiff." *See Millea*, 2014 S.D. 34, ¶ 12, 849 N.W.2d at 276 (quoting *First Am. Bank*, 2008 S.D. 83, ¶ 16, 756 N.W.2d at 26). It cannot be disputed that there is some degree of danger from the presence of a deer carcass on

a driving lane of an interstate. Yet, this does not perforce mean that it was foreseeable that a driver would not be able to avoid striking the carcass. Beyond our assumption that the unidentified driver hit the deer and left the carcass in the driving lane of the interstate, we have no additional facts bearing on the unidentified driver's acts or omissions at the time the deer carcass was left on the interstate. And every user of a highway has "a duty to exercise reasonable care under the circumstances . . . to maintain control of the vehicle so as to be able to stop or otherwise avoid an accident within that person's range of vision." *See Cooper v. Rang*, 2011 S.D. 6, ¶ 6, 794 N.W.2d 757, 758 (quoting jury instruction); *Herren v. Gantvoot*, 454 N.W.2d 539, 542 (S.D. 1990). Here, there is evidence that other drivers using the southbound lane on Interstate 29 avoided the deer carcass.

[¶16.] To accept Stacey's view that a duty exists under the facts of this case would in essence impose strict liability upon all drivers post-impact with wild animals and make them ensurers of the safety of all following travelers. Yet when examining foreseeability of harm, we have said that "[n]o one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen." *Wildeboer v. S.D. Junior Chamber of Commerce, Inc.*, 1997 S.D. 33, ¶ 18, 561 N.W.2d 666, 670 (quoting *Poelstra*, 1996 S.D. 36, ¶ 16, 545 N.W.2d at 826-27 (citation omitted)). We conclude that the circuit court did not err when it ruled that the unidentified driver did not owe Zerfas a common law duty.

[¶17.]     Because there is no common law duty, we next address Stacey's claim that the unidentified driver owed Zerfas a statutory duty under SDCL 31-32-6 to warn of the existence of the deer carcass. That statute provides:

> It shall be the duty of every person who so injures or obstructs any bridge or highway as to render the same unsafe immediately to put up a danger sign and use diligence to notify one or more of the members of the board or commissioners having jurisdiction or supervision over such bridge or highway of such injury or obstruction. A violation of this section is a petty offense.

*Id.* According to Stacey, SDCL 31-32-6 "explicitly" creates a duty upon the unidentified driver to Zerfas and "may well" be evidence of negligence per se. Stacey further directs this Court to SDCL 32-24-8, which defines the act of careless driving to include driving without due caution. She then suggests that "jurors may well conclude that a driver who drives off from a scene where he has caused a deer carcass to be lying in the lanes of travel—particularly in the dark of an early winter morning—is at that point *not* driving carefully and with due caution."

[¶18.]     Neither SDCL 31-32-6 nor SDCL 32-24-8 define the scope of the duty between the unidentified driver and Zerfas under the facts of this case. First, Stacey concedes that there is no evidence that the unidentified driver violated SDCL 32-24-8. Moreover, SDCL 31-32-6 does not create a specific duty on a driver who hits a deer while traveling on a public highway. On the contrary, we have interpreted SDCL 31-32-6 to mean that a driver has a duty "to avoid any *unusual or unreasonable* use of the highway and by such use obstruct the highway or make it dangerous for travel[.]" *See Norman v. Cummings*, 73 S.D. 559, 563, 45 N.W.2d 839, 841 (1951) (emphasis added) (interpreting the predecessor statute). We

explained that "no liability attaches to the user as a result of such use," if a driver injures or obstructs a highway rendering it unsafe because of that driver's usual, ordinary, and reasonable use of the highway[.]" *Id.*

[¶19.]	There is no evidence and Stacey makes no claim that the unidentified driver's use of the highway was unusual or unreasonable.  Moreover, although the deer carcass created a hazard on the interstate, that hazard does not necessarily mean the interstate was obstructed or that the highway became dangerous for travel as contemplated by SDCL 31-32-6.  *See Norman*, 73 S.D. at 563, 45 N.W.2d at 841 (presence of hazard was "a mere circumstance of the accident").  Therefore, the circumstances do not support that the unidentified driver owed Zerfas a statutory duty under SDCL 31-32-6.

[¶20.]	Because, under the facts of this case, no common law or statutory duty existed between the unidentified driver and Zerfas, the circuit court did not err when it granted AMCO summary judgment.  There being no duty, we need not address AMCO's alternative argument that Stacey failed to present competent evidence of the accident.

[¶21.]	Affirm.

[¶22.]	GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.