SEVERSON, Retired Justice (dissenting).
[¶36.] This case is not about whether Ridley would win if given the chance to present her case to the jury. Nor would reversal of summary judgment mean this Court is imposing strict or absolute liability on defendants. Rather, this case concerns only whether Ridley has presented sufficient evidence establishing a material issue of fact in dispute precluding summary judgment. In my view, such evidence exists.
[¶37.] I agree with the majority opinion that liability in a dog-bite case can be imposed against an owner in more than one way. An owner of a domesticated animal may "be held liable for harm caused by their pet if the owner knows or has reason to know that the animal has abnormally dangerous propensities." Gehrts v. Batteen , 2001 S.D. 10, ¶ 7, 620 N.W.2d 775, 777. Ridley has not identified a material issue of fact in dispute on the question whether Meadow's owner had reason to know that Meadow has abnormally dangerous propensities.
[¶38.] The majority opinion concludes the same; however, the reliance on Tipton v. Town of Tabor , 1997 S.D. 96, 567 N.W.2d 351 is misplaced. Tipton concerns whether certain government officials owed *585 a special duty to prevent harm caused by two wolfdog hybrids owned by a third party. On the duty question, one inquiry in a four-part test examined whether the governmental officials had actual knowledge of the dangerous condition (i.e., the animal's dangerous propensities). Id. ¶ 6. In resolving that limited inquiry, the Court identified the difference between wild and domestic animals, observing that an owner of a wild animal can be held liable based on the animal's dangerous propensities "even when the owner is unaware of any specific vicious tendencies of the particular animal." Id. ¶ 25.
[¶39.] Here, in contrast, Ridley makes no claim that Meadow is a wild animal. Rather, she asserts material issues of fact are in dispute on the question whether Meadow's attack was foreseeable. When an owner does not have actual knowledge "of the animal's dangerous propensities, the ordinary negligence standard of foreseeability will still be applied" to determine if the owner is liable for the harm caused. Gehrts , 2001 S.D. 10, ¶ 9, 620 N.W.2d at 778. Under this approach, "the plaintiff must establish that as an ordinary, prudent person, the owner should have foreseen the event that caused the injury and taken steps to prevent the injury." Id. "[T]he kind and character of the particular animal concerned, the circumstances in which it is placed, and the purposes for which it is employed or kept" all bear on the determination whether the owner should have foreseen the danger. Id.
[¶40.] It is important to emphasize that although foreseeability must be examined when analyzing the existence of a duty and when assessing whether the plaintiff has established proximate cause, the inquiries are "not invariably the same[.]" Poelstra v. Basin Elec. Power Co-op. , 1996 S.D. 36, ¶ 18, 545 N.W.2d 823, 827. Nonetheless, these separate inquiries are often improperly combined into a single foreseeability analysis. See, e.g. , Zerfas v. AMCO Ins. Co. , 2015 S.D. 99, ¶ 13, 873 N.W.2d 65, 70 (noting this confusion); Peterson v. Spink Elec. Co-op. , 1998 S.D. 60, ¶ 15, 578 N.W.2d 589, 592 (same). To avoid subsuming the element of proximate causation into the foreseeability analysis incidental to duty, it is important to independently examine each foreseeability inquiry.
[¶41.] Existence of a duty turns on "whether a 'relationship exists between the parties such that the law will impose upon the defendant a legal obligation of reasonable conduct for the benefit of the plaintiff.' " Zerfas , 2015 S.D. 99, ¶ 10, 873 N.W.2d at 69 (quoting First Am. Bank & Tr. N.A. v. Farmers State Bank , 2008 S.D. 83, ¶ 16, 756 N.W.2d 19, 26 ). To establish the element of duty, foreseeability must be measured as it "relates to the time when the act or omission occurred[,]" see Poelstra, 1996 S.D. 36, ¶ 18, 545 N.W.2d at 827, "and not by a judgment from actual consequences which were not then to be apprehended by a prudent and competent man." Zerfas , 2015 S.D. 99, ¶ 14, 873 N.W.2d at 70 (quoting Peterson , 1998 S.D. 60, ¶ 15, 578 N.W.2d at 592 ).
[¶42.] Here, the defendants' conduct created an unreasonable risk of injury to Ridley when measured from "the time when the act or omission occurred." See Poelstra, 1996 S.D. 36, ¶ 18, 545 N.W.2d at 827. Even though Meadow had a previous violent encounter with another animal and did not have the benefit of the two-week shutdown period, the defendants brought the dog to the campground. Additionally, as a fellow guest at Newton Hills State Park in close proximity to the dog, Ridley was a foreseeable plaintiff. Therefore, the defendants owed Ridley a duty of care as a matter of law.
[¶43.] On the question of causation, however, foreseeability "is examined at the *586 time the damage was done," see Zerfas , 2015 S.D. 99, ¶ 14, 873 N.W.2d at 70, and deals with the specific, factual circumstances of the case weighed against the plaintiff's burden of proof. Critically, the element of causation is a question of fact for a jury. See id. (citing Peterson , 1998 S.D. 60, ¶ 15, 578 N.W.2d at 592 ). Therefore, summary judgment is only proper "where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm." Restatement (Second) of Torts § 435(2) (1965).
[¶44.] From a review of the record in a light most favorable to Ridley, she presented evidence, if believed by the jury, that Meadow's owner should have foreseen the event that caused the injury and taken steps to prevent the injury. In particular, and as it relates to the kind and character of the animal involved, Ridley presented evidence that Meadow is a pit bull and a rescue dog. She also presented evidence that SEPR had "relatively minimal" information regarding Meadow's history and character. However, SEPR was aware that in a previous foster setting, Meadow and the foster family's dog fought when the family tried to introduce Meadow. To facilitate a dog's transition into a foster setting, SEPR uses a two-week shutdown period to allow the animal to decompress and become acquainted with their new owner and surroundings. It is undisputed Zacher and Podhradsky did not place Meadow on a two-week lockdown prior to taking her to the campground. Ridley also presented evidence that Meadow had been in three separate locations in the days leading to the attack.
[¶45.] I recognize conflicting evidence exists supporting that the actions of SEPR, Zacher, and Podhradsky were non-negligent. But the jury (not this Court) must consider and weigh that evidence against Ridley's evidence that Meadow needed consistency and structure in her living arrangements. Likewise, the jury and not this Court must weigh the evidence that Podhradsky and Zacher had previously dog sat for Meadow and at that time had placed Meadow in the two-week shutdown; that "Meadow never exhibited any aggressive tendencies toward people or other dogs while in Zacher and Podhradsky's care"; that "both Zacher and Podhradsky had experience with handling pit bulls"; that "Zacher attended monthly SEPR meetings, had previously volunteered at another dog rescue, and had volunteered with the American Society for the Prevention of Cruelty to Animals (ASPCA) to help transition fighting pit bulls into shelters." Finally, it is for the jury to weigh the circumstances surrounding the attack, including the evidence that "Meadow was not allowed by SEPR, Zacher, or Podhradsky to roam free at the campsite" and that "[s]he was securely tethered to a tree by a rope and collar."
[¶46.] Given the conflicting evidence, this is not one of the rarest of cases warranting dismissal on summary judgment. See Stensland v. Harding Cty. , 2015 S.D. 91, ¶ 14, 872 N.W.2d 92, 97. I, therefore, dissent.
[¶47.] KERN, Justice, joins this dissent.