#28668-a-DG
**2019 S.D. 48**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DARLETTE MAE RIDLEY,                                    Plaintiff and Appellant,

    v.

SIOUX EMPIRE PIT BULL RESCUE,
INC., SUSAN TRIBBLE-ZACHER
and HARRY PODHRADSKY,                                   Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE DOUGLAS E. HOFFMAN
Judge
* * * *

JAMI J. BISHOP
KIMBERLY J. LANHAM of
Johnson Janklow Abdallah
  & Reiter, LLP
Sioux Falls, South Dakota                              Attorneys for plaintiff and
                                                  appellant.

PAUL H. LINDE
MICHAEL J. SCHAFFER of
Schaffer Law Office, Prof., LLC
Sioux Falls, South Dakota                              Attorneys for defendant and
                                                  appellee, Sioux Empire Pit
                                                  Bull Rescue, Inc.

MELANIE L. CARPENTER
ALEXIS A. WARNER of
Woods, Fuller, Shultz & Smith, P.C.
Sioux Falls, South Dakota                              Attorneys for defendants and
                                                  appellees, Susan Tribble-
                                                  Zacher & Harry Podhradsky.

* * * *

ARGUED MARCH 26, 2019
OPINION FILED **08/07/19**

#28668

GILBERTSON, Chief Justice

[¶1.] Darlette Mae Ridley was attacked and injured by a dog while walking in a state campground. The dog was a pit bull type belonging to Sioux Empire Pit Bull Rescue, Inc. (SEPR) and in the care of Susan Tribble-Zacher and Harry Podhradsky at their campsite. Ridley sued SEPR, Zacher, and Podhradsky claiming they were liable for her injuries. SEPR, Zacher, and Podhradsky filed separate motions for summary judgment, which the circuit court granted. Ridley appeals. We affirm.

## Facts and Procedural History

[¶2.] On the morning of August 9, 2015, Ridley and her family were camping at Newton Hills State Park in Lincoln County, South Dakota. At approximately 7:05 a.m., Ridley decided to take a walk around the campground. Zacher and Podhradsky were also camping at Newton Hills with their son, their dog, and a pit bull named Meadow. At the time, Zacher and Podhradsky were dog sitting for Meadow. As Ridley walked by Zacher and Podhradsky's campsite, she claimed she heard a loud bark and turned to see Meadow tethered to a tree.

[¶3.] Ridley claims she saw Meadow rear up on her hind legs and lunge toward Ridley. As Meadow lunged, her dog collar unexpectedly broke, and she began to run free toward Ridley. Meadow knocked Ridley down onto the gravel road and allegedly bit her. Zacher called out for Meadow to return back to her and Meadow obeyed. The parties agree that Ridley did nothing to incite or provoke the attack.

-1-

[¶4.]     As a result of the attack, Ridley sustained cuts on her elbow, left ring, and pinky fingers, and experienced pain in her lower back.  Podhradsky assisted Ridley to a nearby bench and then into a campground bathroom to clean blood off of Ridley's hand.  Zacher then helped Ridley back to Ridley's campsite and Ridley's husband drove her to the emergency room.  Ridley suffered a fractured finger that required cleaning and stiches.  She incurred medical expenses and lost wages as a result of the dog attack.  She eventually sued SEPR, Zacher, and Podhradsky claiming they were liable for the injuries she sustained.

[¶5.]     At the time of the attack on Ridley, Meadow was owned by SEPR.  SEPR is an organization that accepts pit bulls from animal shelters, situations of abuse and neglect, and dog fighting rings.  The organization does not have its own physical location, so rescued animals are placed with foster providers until a permanent home for the animals can be located.

[¶6.]     Meadow was picked up by the Sioux City Humane Society sometime before July 2014.  SEPR later took possession of Meadow and placed her with Jennifer Praske, a foster provider in Worthing, South Dakota.  Meadow stayed with Praske from July 2014 to December 2014.  SEPR then transferred Meadow to live with Desiree and Jon Adams in Platte, Nebraska.  On March 1, 2015, when the Adams were attempting to introduce Meadow to their family dog, a fight ensued and both dogs were injured.  In April 2015, Meadow was placed with Heather Boon, where she remained up until right before the attack on Ridley.

[¶7.]     Shortly before the attack, Boon wanted to go out of town, so she notified SEPR to find temporary foster providers for Meadow.  SEPR arranged for

Zacher and Podhradsky to act as Meadow's temporary caregivers. Zacher and Podhradsky had previously dog sat Meadow twice and had experience raising, fostering, and dog-sitting pit bulls. On July 31, 2015, Boon brought Meadow to Zacher and Podhradsky's home. The pair were scheduled to take care of Meadow until Saturday, August 8, 2015. However, Boon contacted Zacher to notify her that her trip had been extended and that Boon would not return home until Sunday, August 9, 2015. Zacher and Podhradsky had already made plans to camp overnight at Newton Hills so they decided to take Meadow with them.

[¶8.]     The parties disagree as to whether Zacher and Podhradsky violated SEPR's policy by bringing Meadow with them to camp at Newton Hills. SEPR's President, Rachel DeZell Leighton, testified in a deposition that SEPR requires that each animal undergo a two-week shutdown period after they are transferred to a new foster home. The two-week shutdown period requires that the new caregivers segregate a dog and bond the dog to only one caregiver.

[¶9.]     During the two-week shutdown, a dog is kept separate from other animals and prohibited from leaving the caregiver's home or yard. Leighton testified that "[t]he two-week shutdown allows an animal to decompress and begin to bond with a handler. It builds the relationship of trust" between the dog and the new foster care provider. Ridley claims that Zacher and Podhradsky violated SEPR's policy because they did not perform a two-week shutdown period with Meadow before bringing her to the Newton Hills campground. Zacher, Podhradsky, and SEPR claim that the two-week shutdown policy was optional in this situation,

[¶10.] After Ridley sued SEPR, Zacher, and Podhradsky for her injuries, SEPR, Zacher, and Podhradsky filed separate motions for summary judgment arguing that there were no disputed material facts and that they were entitled to judgment as a matter of law. Ridley resisted the summary judgment motions. A hearing was held on June 7, 2018. The circuit court granted the motions for summary judgment, holding that there was no evidence showing a lack of reasonable care on the part of SEPR, Zacher, or Podhradsky. Ridley appeals, asking this Court to determine issues that can be consolidated into the question of whether the circuit court erred in granting SEPR, Zacher, and Podhradsky's motions for summary judgment.

## Standard of Review

[¶11.] "In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Nicolay v. Stukel*, 2017 S.D. 45, ¶ 16, 900 N.W.2d 71, 77-78 (quoting *Gades v. Meyer Modernizing Co.*, 2015 S.D. 42, ¶ 7, 865 N.W.2d 155, 157-58). "We view the evidence most favorably to the nonmoving party and resolve reasonable doubts against the moving party." *Id.* (quoting *Gades*, 2015 S.D. 42, ¶ 7, 865 N.W.2d at 158).

## Analysis & Decision

[¶12.] Ridley claims the circuit court erred in granting SEPR, Zacher, and Podhradsky's motions for summary judgement for two reasons. First, she claims the circuit court incorrectly weighed the evidence, viewing the facts of the case in a

light most favorable to SEPR, Zacher, and Podhradsky as opposed to a light most favorable to Ridley. She also argues that there was sufficient evidence for a jury to conclude that SEPR, Zacher, and Podhradsky breached their standard duty of care toward Ridley.

[¶13.] "Negligence is the breach of a duty owed to another, the proximate cause of which results in an injury." *Lindblom v. Sun Aviation, Inc.*, 2015 S.D. 20, ¶ 19, 862 N.W.2d 549, 555 (quoting *Englund v. Vital*, 2013 S.D. 71, ¶ 11, 838 N.W.2d 621, 627). Consequently, "[b]efore a defendant can be held liable for negligence, the defendant must have breached a duty of care owed to the plaintiff." *Locke v. Gellhaus*, 2010 S.D. 11, ¶ 11, 778 N.W.2d 594, 597. "Whether a duty exists is a question of law; whether a defendant's conduct constitutes a breach of a duty is a question of fact." *Nicolay*, 2017 S.D. 45, ¶ 16, 900 N.W.2d at 78.

[¶14.] Under South Dakota law, "[o]wners of domesticated animals may . . . be held liable for harm caused by their pet . . . ." *Gehrts v. Batteen*, 2001 S.D. 10, ¶ 7, 620 N.W.2d 775, 777. "[I]n such a case against a dog owner, the plaintiff must establish that as an ordinary, prudent person, the owner should have foreseen the event that caused the injury and taken steps to prevent the injury." *Rowland v. Log Cabin, Inc.*, 2003 S.D. 20, ¶ 8, 658 N.W.2d 76, 78. "Such liability may arise depending upon the kind and character of the particular animal concerned, the circumstances in which it is placed, and the purposes for which it is employed or kept." *Id.* (quoting *Gehrts*, 2001 S.D. 10, ¶ 9, 620 N.W.2d at 778). "[I]f a plaintiff proves that the dog owner knew or had reason to know of the dog's dangerous propensity the plaintiff will be deemed to have established the foreseeability

element of negligence." *Id.* ¶ 9, 658 N.W.2d at 79. "[T]o establish foreseeability, a plaintiff in a dog bite case may either argue to the jury that the owner knew or should have known of the dog's dangerous propensities or that, under the totality of the circumstances, injury to the plaintiff was reasonably foreseeable." *Id.*

[¶15.]        Here, both parties agree. The circuit court granted the motions for summary judgment on the basis that the injury to Ridley was not foreseeable. As to SEPR, Zacher, and Podradsky's knowledge of Meadow's dangerous propensities, the circuit court stated that:

> *[I]t seems to me that there isn't any evidence to suggest that this dog had dangerous propensities.* There wasn't any history of any kind of dangerous or aggressive behavior on the part of the dog. The closest thing that the plaintiffs can suggest is that the dog was the victim of an attack by another dog two and a half years prior, and I don't think we can draw any inferences in the light most favorable to the plaintiff that are beyond that . . . .

(Emphasis added.) The circuit court also discussed the foreseeability of Meadow's attack on Ridley in detail, stating:

> There isn't any evidence to show that the defendants knew or should have known the collar was going to break on that morning at 7 o'clock if the dog put physical stress on it. It's anticipated that dogs were going to put stress on collars and that's why you have a collar that fits the dog and you have a tether that's adequate to hold the dog, and *there isn't indication that the defendants have any reason to believe that that wasn't an appropriate safety device.* So I can't draw any conclusion of negligence from that. *We don't have any expert testimony to contradict that . . . so there isn't any evidence for the lack of reasonable care on the part of the defendants* that's been brought to the record at this point in time. There's a suggestion that while they violated their own rule that you're supposed to have a two-week lockdown, but it sounds to me like that might be a made-up rule. There isn't anything to justify it or establish it as a duty of care. And the testimony is it was, you know, an option within the discretion of the parties based upon their understanding of the pet and the circumstances, but in order to

> view that evidence as suggested by the plaintiff herein, I would have to find that it's negligence to take dogs camping and tether them to trees and—because the collar might snap. *And I just don't think that's foreseeable under the circumstances or in this particular case. . . .*

(Emphasis added.) Having detailed its view on the foreseeability of Ridley's injuries, the circuit court concluded that there was no dispute "as to any material facts in viewing all the evidence in the light most favorable to the plaintiff[,]" and granted summary judgment.

[¶16.] Here, Ridley does not contest the circuit court's findings as to knowledge, but rather, "asks this Court to reverse the trial court's grant of summary judgment based on the foreseeability test." In effect, Ridley argues that there was sufficient evidence for a jury to find that it was foreseeable that Meadow would have attacked Ridley because of Meadow's breed and character, and the circumstances in which Meadow was placed. *See Rowland*, 2003 S.D. 20, ¶ 8, 658 N.W.2d at 78 (quoting *Gehrts*, 2001 S.D. 10, ¶ 9, 620 N.W.2d at 778).

[¶17.] Ridley first points to evidence in the record that she believes shows that pit bull type dogs have inherently dangerous breed tendencies. Indeed, Leighton testified that bulldogs and terriers are "selectively bred for specific and superior fighting abilities[,]" and that SEPR instructs its volunteers to "never trust a pit bull not to fight" because "that is genetically what [the animals] were bred to do." Leighton also testified that SEPR prohibits its dogs from going to dog parks and requires its dogs to be supervised and leashed at all times. Another SEPR board member, Brittany Snyders, testified that pit bulls are high energy dogs, and that SEPR trains its dogs to prevent aggressive behaviors. Ridley appears to argue

that because these aggressive tendencies may be present in some pit bulls, a reasonable person should be held to a higher standard of care when caring for a pit bull type dog.

[¶18.] The law in South Dakota does not support any such breed-specific standard of care. We instead recognize that "[d]ogs . . . are presumed tame and docile and the burden is on [a] plaintiff[] to show otherwise." *Tipton v. Town of Tabor*, 1997 S.D. 96, ¶ 24, 567 N.W.2d 351, 362. Here, Ridley has failed to show that Meadow was the kind and character of dog which would make it foreseeable that Meadow would attack a human.

[¶19.] Testimony in the record indicates that *some* pit bulls may possess aggressive tendencies, but only as it relates to other dogs and not to humans. As to Meadow's own character, there was only one noted instance of aggression during Meadow's history with SEPR. That instance involved a fight with another dog belonging to one of Meadow's foster families and not an attack on a human. Prior to the attack on Ridley, Meadow was described as being "a really happy, sweet dog[,]" "happy-go-lucky[,]" "calm," and "easy to deal with." Thus, Meadow's breed or character does not appear to have made the attack on Ridley foreseeable.

[¶20.] Ridley next argues that Meadow's attack on her was foreseeable due to the circumstances in which Meadow was placed with Zacher and Podhradsky prior to the attack. First, Ridley claims that Meadow should not have been brought to the campground because she had not been placed on a two-week lockdown in compliance with SEPR policy. Second, Ridley contends that a reasonable person would have foreseen that Meadow could cause harm because she lacked

"consistency and structure in [her] living arrangements." Importantly, Ridley does not appear to contend that the collar worn by Meadow or the way in which Meadow was tethered made the attack on Ridley foreseeable.

[¶21.] Even if Meadow's presence at Newton Hills campground somehow violated SEPR's two-week shutdown period, the failure to comply with the policy did not make it foreseeable that Meadow, specifically, would cause injury. Podhradsky testified that he and Zacher had previously dog sat for Meadow in November of 2014. Podhradsky indicated that, at that time, he and Zacher *did* place Meadow into the two-week shutdown. Zacher and Podhradsky dog sat Meadow again in the early summer of 2015 and interacted with Meadow at SEPR's various public meet-and-greet events. Meadow never exhibited any aggressive tendencies toward people or other dogs while in Zacher and Podhradsky's care. In addition, both Zacher and Podhradsky had experience with handling pit bulls prior to Meadow's attack on Ridley. The couple owned two other pit bull dogs and had volunteered with SEPR since 2011. Zacher attended monthly SEPR meetings, had previously volunteered at another dog rescue, and had volunteered with the American Society for the Prevention of Cruelty to Animals (ASPCA) to help transition fighting pit bulls into shelters.

[¶22.] For these same reasons, Meadow's foster placement conditions between Boon, Zacher, and Podhradsky during the week prior to the attack did not make it foreseeable that Meadow would attack Ridley. There was no evidence that, even under the potential stress of changing environments, Meadow would be likely to attack Ridley.

[¶23.] Moreover, the uncontested fact remains that at the time of the attack, Meadow was not allowed by SEPR, Zacher, or Podhradsky to roam free at the campsite. She was securely tethered to a tree by a rope and collar. It was not foreseeable that the collar would break allowing Meadow to come into physical contact with Ridley. Had the collar held, it and the rope would have restrained Meadow and the attack would have never occurred.

[¶24.] Even when viewing the facts in a light most favorable to Ridley, there was no indication that it was foreseeable that Meadow would have attacked Ridley on the morning of August 9, 2015. Therefore, SEPR, Zacher, and Podhradsky did not breach their duty of reasonable care toward Ridley. The circuit court did not err in granting SEPR, Zacher, and Podhradsky's motions for summary judgment. We affirm.

[¶25.] JENSEN, Justice, and SALTER, Justice, concur specially.

[¶26.] KERN, Justice, and SEVERSON, Retired Justice, dissent.

SALTER, Justice (concurring specially).

[¶27.] I am in agreement with the majority opinion that the circuit court's decision to grant the motion for summary judgment should be affirmed, and I believe the Court correctly concludes that the injury to Ridley, unprovoked and unanticipated as it was, simply was not foreseeable. This determination, however, is very much confined to this case—not only because of its unique facts, but also because of the state of the existing record. In my view, there is no set of permissible inferences from the material facts presented here that would support a submissible

negligence claim. I write separately, therefore, to focus upon what I believe to be an uncomplicated application of our well-established rules for reviewing summary judgment orders under SDCL 15-6-56.

[¶28.] Among this case's constituent facts are a relatively small number of material facts whose determination "would affect the outcome of the suit . . . in that 'a reasonable jury could return a verdict for the nonmoving party.'" *Robinson v. Ewalt*, 2012 S.D. 1, ¶ 10, 808 N.W.2d 123, 126 (quoting *Gul v. Ctr. for Family Med.*, 2009 S.D. 12, ¶ 8, 762 N.W.2d 629, 633). Determining whether summary judgment was correct here requires us to consider these facts for more than their bare significance by allowing all reasonable inferences and viewing them in the light most favorable to Ridley. The requirement that the inferences be grounded in reason necessarily means they must not be the product of "speculation or conjecture." *Hanson v. Big Stone Therapies, Inc.*, 2018 S.D. 60, ¶ 40, 916 N.W.2d 151, 161.

[¶29.] This basic standard applied here reveals the following facts which may be material to a determination of liability under a common law negligence theory:

> (1) Meadow is a pit bull;
>
> (2) Pit bulls have historically been bred to fight other dogs;
>
> (3) Meadow was acquired by the Sioux City Humane Society sometime prior to July 2014;
>
> (4) Meadow had been cared for by SEPR volunteers for over one year prior to the August 9, 2015, attack;
>
> (5) Meadow had no known dangerous propensities;
>
> (6) SEPR requires a two-week shutdown period after a dog is placed in a new home;

(7) Meadow did not undergo a two-week shutdown period when she was placed temporarily with Zacher and Podhradsky and was with them during their camping trip on August 9; and

(8) Meadow was collared and tethered at a campsite on the morning of the August 9 attack.

[¶30.]     These facts would not, themselves, support a verdict for Ridley, even when their impact is augmented with reasonable inferences and viewed in the light most favorable to Ridley. Whether considered in isolation or in concert, the range of permissible inferences from these key facts stalls under this record, and a factual theory of recovery under negligence principles unavoidably implicates conjecture.

[¶31.]     For instance, the fact that Meadow is a pit bull and a member of a breed historically bred to fight other dogs does not support an inference that she was dangerous to humans. In fact, there is no evidence that any of the defendants knew or should have known that Meadow had any dangerous propensities. In the absence of some showing that Meadow's attack was something other than random unexplained behavior, an adverse inference about the pit bull breed could not support a verdict for Ridley.

[¶32.]     Nor could Ridley establish liability because Zacher and Podhradsky did not require Meadow to undergo a two-week shutdown period. Though this period exists to allow a dog to adjust to new surroundings, concluding that the dog may precipitously attack a human in the absence of the two-week period requires speculation. The only witnesses to testify about the purposes of the shutdown period were affiliated with SEPR, and their testimony does not support even an inference that the shutdown was related to human safety concerns.

[¶33.]    Finally, as the Court's opinion ably points out, there is no showing here that it was reasonably foreseeable Meadow would break her collar, and attack Ridley. The apparent failure of Meadow's collar is unaccompanied by other evidence from which a reasonable inference of negligence could be drawn. A jury could not, without speculating, determine that the failure of the collar justified a verdict for Ridley.

[¶34.]    There is certainly no allegation that Ridley contributed to the attack in any way, and I can understand her inclination to seek compensation. However, denying summary judgment on this record would effectively authorize strict or absolute liability for unprovoked and unanticipated attacks by dogs. This result is not recognized under existing law, which is governed, instead, by negligence principles. Our role requires us to faithfully apply these principles and our well-settled rules for reviewing summary judgment orders. Doing so here leads inexorably to the conclusion that we must affirm the circuit court's decision.

[¶35.]    JENSEN, Justice, joins this special writing.


SEVERSON, Retired Justice (dissenting).

[¶36.]    This case is not about whether Ridley would win if given the chance to present her case to the jury. Nor would reversal of summary judgment mean this Court is imposing strict or absolute liability on defendants. Rather, this case concerns only whether Ridley has presented sufficient evidence establishing a material issue of fact in dispute precluding summary judgment. In my view, such evidence exists.

[¶37.]	I agree with the majority opinion that liability in a dog-bite case can be imposed against an owner in more than one way. An owner of a domesticated animal may "be held liable for harm caused by their pet if the owner knows or has reason to know that the animal has abnormally dangerous propensities." *Gehrts v. Batteen*, 2001 S.D. 10, ¶ 7, 620 N.W.2d 775, 777. Ridley has not identified a material issue of fact in dispute on the question whether Meadow's owner had reason to know that Meadow has abnormally dangerous propensities.

[¶38.]	The majority opinion concludes the same; however, the reliance on *Tipton v. Town of Tabor*, 1997 S.D. 96, 567 N.W.2d 351 is misplaced. *Tipton* concerns whether certain government officials owed a special duty to prevent harm caused by two wolfdog hybrids owned by a third party. On the duty question, one inquiry in a four-part test examined whether the governmental officials had actual knowledge of the dangerous condition (i.e., the animal's dangerous propensities). *Id.* ¶ 6. In resolving that limited inquiry, the Court identified the difference between wild and domestic animals, observing that an owner of a wild animal can be held liable based on the animal's dangerous propensities "even when the owner is unaware of any specific vicious tendencies of the particular animal." *Id.* ¶ 25.

[¶39.]	Here, in contrast, Ridley makes no claim that Meadow is a wild animal. Rather, she asserts material issues of fact are in dispute on the question whether Meadow's attack was foreseeable. When an owner does not have actual knowledge "of the animal's dangerous propensities, the ordinary negligence standard of foreseeability will still be applied" to determine if the owner is liable for the harm caused. *Gehrts*, 2001 S.D. 10, ¶ 9, 620 N.W.2d at 778. Under this

approach, "the plaintiff must establish that as an ordinary, prudent person, the owner should have foreseen the event that caused the injury and taken steps to prevent the injury." *Id.* "[T]he kind and character of the particular animal concerned, the circumstances in which it is placed, and the purposes for which it is employed or kept" all bear on the determination whether the owner should have foreseen the danger. *Id.*

[¶40.] It is important to emphasize that although foreseeability must be examined when analyzing the existence of a duty and when assessing whether the plaintiff has established proximate cause, the inquiries are "not invariably the same[.]" *Poelstra v. Basin Elec. Power Co-op.*, 1996 S.D. 36, ¶ 18, 545 N.W.2d 823, 827. Nonetheless, these separate inquiries are often improperly combined into a single foreseeability analysis. *See, e.g., Zerfas v. AMCO Ins. Co.*, 2015 S.D. 99, ¶ 13, 873 N.W.2d 65, 70 (noting this confusion); *Peterson v. Spink Elec. Co-op.*, 1998 S.D. 60, ¶ 15, 578 N.W.2d 589, 592 (same). To avoid subsuming the element of proximate causation into the foreseeability analysis incidental to duty, it is important to independently examine each foreseeability inquiry.

[¶41.] Existence of a duty turns on "whether a 'relationship exists between the parties such that the law will impose upon the defendant a legal obligation of reasonable conduct for the benefit of the plaintiff.'" *Zerfas*, 2015 S.D. 99, ¶ 10, 873 N.W.2d at 69 (quoting *First Am. Bank & Tr. N.A. v. Farmers State Bank*, 2008 S.D. 83, ¶ 16, 756 N.W.2d 19, 26). To establish the element of duty, foreseeability must be measured as it "relates to the time when the act or omission occurred[,]" *see Polestra,* 1996 S.D. 36, ¶ 18, 545 N.W.2d at 827, "and not by a judgment from actual

consequences which were not then to be apprehended by a prudent and competent man." *Zerfas*, 2015 S.D. 99, ¶ 14, 873 N.W.2d at 70 (quoting *Peterson*, 1998 S.D. 60, ¶ 15, 578 N.W.2d at 592).

[¶42.]     Here, the defendants' conduct created an unreasonable risk of injury to Ridley when measured from "the time when the act or omission occurred." *See Polestra,* 1996 S.D. 36, ¶ 18, 545 N.W.2d at 827. Even though Meadow had a previous violent encounter with another animal and did not have the benefit of the two-week shutdown period, the defendants brought the dog to the campground. Additionally, as a fellow guest at Newton Hills State Park in close proximity to the dog, Ridley was a foreseeable plaintiff. Therefore, the defendants owed Ridley a duty of care as a matter of law.

[¶43.]     On the question of causation, however, foreseeability "is examined at the time the damage was done," *see Zerfas*, 2015 S.D. 99, ¶ 14, 873 N.W.2d at 70, and deals with the specific, factual circumstances of the case weighed against the plaintiff's burden of proof. Critically, the element of causation is a question of fact for a jury. *See id.* (citing *Peterson*, 1998 S.D. 60, ¶ 15, 578 N.W.2d at 592). Therefore, summary judgment is only proper "where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm." Restatement (Second) of Torts § 435(2) (1965).

[¶44.]     From a review of the record in a light most favorable to Ridley, she presented evidence, if believed by the jury, that Meadow's owner should have foreseen the event that caused the injury and taken steps to prevent the injury. In

particular, and as it relates to the kind and character of the animal involved, Ridley presented evidence that Meadow is a pit bull and a rescue dog. She also presented evidence that SEPR had "relatively minimal" information regarding Meadow's history and character. However, SEPR was aware that in a previous foster setting, Meadow and the foster family's dog fought when the family tried to introduce Meadow. To facilitate a dog's transition into a foster setting, SEPR uses a two-week shutdown period to allow the animal to decompress and become acquainted with their new owner and surroundings. It is undisputed Zacher and Podhradsky did not place Meadow on a two-week lockdown prior to taking her to the campground. Ridley also presented evidence that Meadow had been in three separate locations in the days leading to the attack.

[¶45.]    I recognize conflicting evidence exists supporting that the actions of SEPR, Zacher, and Podhradsky were non-negligent. But the jury (not this Court) must consider and weigh that evidence against Ridley's evidence that Meadow needed consistency and structure in her living arrangements. Likewise, the jury and not this Court must weigh the evidence that Podhradsky and Zacher had previously dog sat for Meadow and at that time had placed Meadow in the two-week shutdown; that "Meadow never exhibited any aggressive tendencies toward people or other dogs while in Zacher and Podhradsky's care"; that "both Zacher and Podhradsky had experience with handling pit bulls"; that "Zacher attended monthly SEPR meetings, had previously volunteered at another dog rescue, and had volunteered with the American Society for the Prevention of Cruelty to Animals (ASPCA) to help transition fighting pit bulls into shelters." Finally, it is for the jury

to weigh the circumstances surrounding the attack, including the evidence that "Meadow was not allowed by SEPR, Zacher, or Podhradsky to roam free at the campsite" and that "[s]he was securely tethered to a tree by a rope and collar."

[¶46.]　　　Given the conflicting evidence, this is not one of the rarest of cases warranting dismissal on summary judgment.  *See Stensland v. Harding Cty.*, 2015 S.D. 91, ¶ 14, 872 N.W.2d 92, 97.  I, therefore, dissent.

[¶47.]　　　KERN, Justice, joins this dissent.