#29611-a-SPM
**2022 S.D. 42**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

TERESA A. MCCOY and
K.S. CLARK,                                    Plaintiffs and Appellants,

            v.

SANDRA K. MCCALLUM, as
trustee of the SANDRA K.
MCCALLUM LIVING TRUST, and
SANDRA K. MCCALLUM, in her
personal capacity,                             Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ERIC J. STRAWN
Judge

* * * *

SARAH BARON HOUY
MARK F. MARSHALL of
Bangs, McCullen, Butler,
    Foye & Simmons, LLP
Rapid City, South Dakota          Attorneys for plaintiffs and
                                  appellants.


TIMOTHY R. JOHNS of
Johns & Kosel, Prof. LLC
Lead, South Dakota

ROGER A. TELLINGHUISEN of
DeMersseman, Jensen, Tellinghuisen
    & Huffman, LLP
Rapid City, South Dakota          Attorneys for defendants and
                                  appellees.

* * * *

CONSIDERED ON BRIEFS
NOVEMBER 8, 2021
OPINION FILED **07/27/22**

#29611

MYREN, Justice

[¶1.] Sandra McCallum (McCallum) entered into a lease agreement (Lease) with Teresa McCoy and K.S. Clark (collectively referred to as McCoy). The Lease gave McCoy a right of first refusal to purchase the leased property at the same price and terms of any bona fide offer. McCallum received an offer from Dakota Legends Properties, LLP (DLP) and notified McCoy of the offer. McCoy made two offers on the property. McCallum rejected both of McCoy's offers and accepted DLP's offer. McCoy sued, and McCallum answered and counterclaimed. The parties filed cross-motions for partial summary judgment about whether DLP's offer was "bona fide." McCallum also requested partial summary judgment about whether McCoy had been offered the right to purchase on the same terms. The circuit court determined that DLP's offer was bona fide, McCoy had been offered the right of first refusal, and McCoy did not exercise that right. The circuit court granted McCallum's motion to expunge McCoy's lis pendens. McCoy appeals, and we affirm.

## Facts and Procedural History

[¶2.] McCallum is the Trustee of the Sandra K. McCallum Living Trust (Trust). The Trust owns a property at 675 Main Street, Deadwood, South Dakota (Leased Premises). This property is used to operate the Gold Nugget Trading Post (Gold Nugget), a retail store for gift and tourist items. On August 27, 2020, McCallum, as Trustee, entered into two agreements with McCoy: 1) a purchase agreement for the inventory and supplies of the Gold Nugget remaining as of March 31, 2020, and 2) the Lease for the Leased Premises.

-1-

[¶3.]     The Lease was for five years commencing on April 1, 2020, at $3,500 per month.  Section IX of the Lease, titled Right of First Refusal to Purchase, reads in relevant part:

> In the event Landlord should decide to sell the lease premises herein to another party or parties during the term of this Lease, and if Landlord receives a bonafide [sic] offer which is satisfactory to the Landlord before the expiration of the term of this Lease, then *Landlord agrees to give the Tenant the privilege of buying the leased premises at the same price and on the same terms of the bonafide* [sic] *offer so made.*

(Emphasis added.)

[¶4.]     On October 5, 2020, McCallum entered into a real estate purchase agreement for the Leased Premises with DLP for $840,000 with a closing date of December 1, 2020.  This agreement was contingent on several conditions.  Paragraph three stated:

> [T]his offer is contingent upon Purchaser obtaining a new loan, Purchaser agrees to immediately make application for and diligently endeavor to procure such loan without delay, and to sign the note and mortgage within five (5) days after they are ready.

Paragraph five contained several contingencies providing:

> 1)  Buyer reserves the right to have the property inspected within 14 business days after the first right of refusal is removed[.]
> 2)  If buyer would inherit any active legal proceedings regarding the lease the buyer would like to reserve the right to review the documentation with the attorney prior to closing[.]
> 3)  This offer is contingent on the buyer viewing and approving the easement with Midnight Star and the stairway within 10 business days of receipt of the title work.
>
> Should the results of any inspections not be satisfactory to Purchaser, then, within this same period, Purchaser shall notify Seller or Listing Broker in writing of the specific dissatisfaction

and at which time parties may renegotiate or terminate this contract. If Purchaser fails to specifically approve or disapprove any inspections within the time specified, then Purchaser shall be deemed to have approved and accepted the property in its present condition and any real estate licensee having anything to do with this transaction does not have any further obligation to Purchaser as to such inspections or agreement.

Paragraph seven, titled "Other Provisions," stated:

1) This offer is contingent on the 1st right of refusal by Clark/McCoy being released within 30 calendar days of acceptance of this offer[.]

2) Buyer and seller to agree on which seller owned items will remain with the property[.]

3) This offer is contingent on the buyer obtaining a new Conventional Loan and the pre-approval letter will be presented to the seller within 1 week of acceptance[.]

4) [T]his offer is subject to the property appraising for at least the purchase price and the appraisal will not be ordered until the inspection contingency is removed[.]

5) This offer is subject to the first right of refusal by the Midnight Star being released on the Chinese tunnel within 2 weeks of acceptance[.]

6) In the event that the tunnel cannot be included in this offer the purchase price will be $800,000, Valuing the Tunnel easement at $40,000[.]

[¶5.] On October 6, 2020, McCallum sent McCoy a certified letter informing McCoy that she had received a bona fide offer to purchase the Leased Premises for a total amount of $840,000. The letter told McCoy that she had 14 calendar days from the date of the letter to exercise her right of first refusal with "proof satisfactory to Landlord that you can have the ability to meet the cash price term at this time." This letter did *not* include the purchase agreement as an attachment. McCoy responded with a letter dated October 15, 2020, noting that McCallum had not provided a copy of the offer, including all of its terms. McCoy explained that

once she received that information, a thirty-day period would provide her reasonable time to decide whether to exercise her right of first refusal.

[¶6.]    On October 18, 2020, McCallum notified McCoy that Midnight Star LLC (Midnight Star) opted to exercise their right of first refusal to purchase the tunnel easement of the Leased Premises for $40,000. McCallum included a copy of the purchase agreement, updated to reflect Midnight Star's exercise of its right of first refusal, with DLP's name redacted. McCallum informed McCoy that she had until October 20, 2020, to exercise the option to purchase the property for $800,000 and provide proof of ability to pay. On October 20, 2020, McCoy responded and indicated that she intended to exercise her right of first refusal but asserted that McCallum had not provided her adequate information to satisfy her bank's questions. McCoy raised questions regarding asbestos in the building, leaks in the roof drains, structural issues with the brick chases, whether DLP would inherit pending litigation, whether DLP had been informed that McCoy was opting to extend the Lease for five years and subletting to another party, and other questions about Midnight Star and the basement space.

[¶7.]    The same day, McCallum responded and asserted that McCoy had not exercised the right of first refusal because she had not agreed to pay $800,000 and failed to provide proof of ability to pay. Nevertheless, on October 22, 2020, McCallum sent McCoy an email extending the deadline to exercise the right of first refusal to October 26, 2020.

[¶8.]    On October 25, 2020, McCoy made two offers to McCallum. The first offer proposed a *contract for deed* for $941,236. This offer also envisioned McCallum

forfeiting a $149,000 claim she had asserted against McCoy in a separate lawsuit regarding the inventory purchase agreement. The second offer was a cash offer for $644,000.[1] McCallum rejected both proposals because they did not match DLP's purchase price of $800,000, and McCoy did not provide proof of ability to pay. McCallum informed McCoy that she would proceed to close with DLP on December 1, 2020.

[¶9.] On November 4, 2020, McCallum sent McCoy an email she had received from the inspector hired by DLP that identified several issues with the building. Despite these identified concerns, McCallum and DLP did not renegotiate the terms of the original purchase agreement, and McCallum informed McCoy that the sale to DLP would proceed. McCoy filed a complaint against McCallum, seeking, among other things, declaratory relief that DLP's offer was not a bona fide offer because it contained contingencies. McCoy recorded a notice of lis pendens against the property on November 6, 2020. McCallum answered the complaint and asserted three counterclaims. McCallum also filed a motion to expunge the notice of lis pendens, claiming it was filed in bad faith to stop the pending sale.

[¶10.] On November 25, 2020, McCoy filed a summary judgment motion asserting DLP's offer was not a bona fide offer because its contingencies allowed DLP the "unqualified ability to renegotiate or terminate the contract." McCoy also

---

1. Although the offer price was identified as $800,000, the offer also provided that, from that offer price, McCallum would pay the real estate commission and closing costs ($56,000) as well as $80,000 toward resolving issues like roofing repair and asbestos removal. The DLP purchase agreement did not include any deductions from the purchase price for roofing, asbestos removal, or commissions.

argued that there was not a meeting of the minds on price because DLP could renegotiate the contract based on the inspection results, and therefore, the right of first refusal had not been triggered.

[¶11.]     On December 8, 2020, McCallum filed a motion for partial summary judgment requesting the circuit court to rule as a matter of law that DLP's offer was "bona fide." McCallum acknowledged that DLP's offer required the buyer to provide proof of ability to pay and was contingent on a property inspection and an appraisal at least equal to the purchase price. In her statement of undisputed material facts, McCallum asserted that: "Each of these contingencies were previously met and the parties were prepared to close the sale as of December 1, 2020 the date set forth in [the purchase agreement]." McCoy did not dispute this factual assertion.

[¶12.]     The circuit court heard the parties' cross-motions for summary judgment on December 16, 2020. McCoy's counsel argued that the DLP offer was not a bona fide offer because it "was an offer contingent on financing and contingent on inspections and contingent upon further negotiations." The court inquired why having contingencies would make the offer not bona fide. McCoy's counsel replied, "What makes it not bona fide is that it's contingent on matters that are outside the control of [McCoy]." McCoy's counsel further claimed that the structure of the offer "deprived [McCoy] of the ability to meet that offer at the same price and [on] the same terms." The circuit court inquired whether anything in the record would show that McCoy requested the same offer with the same contingencies. McCoy's counsel acknowledged McCoy's receipt of the "real estate purchase agreement with all of the terms that were being offered by the buyer to the trust" but insisted that McCoy

had never been extended the opportunity to exercise her right of first refusal on the same terms as offered by DLP. The circuit court again inquired: "Do we—again, I'm looking for a correspondence from your client to the Trust that states, 'We accept the same terms that are provided in the real estate sales agreement point by point.' We don't have that, do we?" McCoy's counsel responded: "I'm not going to answer that question directly at this point, Your Honor. What I'm going to say is that the defendants never extended the opportunity to meet that at that time."

[¶13.]        In a memorandum decision issued later, the circuit court denied McCoy's motion for partial summary judgment, granted McCallum's motion for partial summary judgment, and granted McCallum's motion to expunge the lis pendens. The circuit court defined "bona fide offer" as "a sincere or genuine display of willingness to enter into a contract on specified terms made in good faith without fraud or deceit." Noting that McCoy had not produced evidence demonstrating that DLP's offer was made in bad faith, the circuit court concluded that DLP's offer was a bona fide offer under the lease terms. The circuit court noted that it was undisputed that McCoy had been provided with a copy of the purchase agreement between McCallum and DLP, although DLP's name was redacted. The circuit court concluded that McCallum's redaction of the purchaser's name did not alter the bona fide nature of DLP's offer. The circuit court noted that contingencies are a routine part of real estate contracts, and their inclusion in the purchase agreement did not create an indefinite term. The circuit court concluded that the purchase agreement was a bona fide offer, the undisputed facts showed that McCallum provided McCoy

the opportunity to exercise her right of first refusal, and McCoy had not done so.

The circuit court also granted McCallum's motion to expunge McCoy's lis pendens.

[¶14.]     The circuit court entered an order and judgment granting McCallum

"judgment as a matter of law" on the declaratory relief claim regarding the right of

first refusal and certified the judgment as final under SDCL 15-6-54(b).

### Analysis and Decision

### 1.     *Whether the circuit court erred when it determined that McCallum received a bona fide offer.*

[¶15.]     This Court has established:

> In reviewing a grant or a denial of summary judgment under
> SDCL 15-6-56(c), we must determine whether the moving party
> demonstrated the absence of any genuine issue of material fact
> and [established] entitlement to judgment on the merits as a
> matter of law.  The evidence must be viewed most favorably to
> the nonmoving party[,] and reasonable doubts should be
> resolved against the moving party . . . .  Our task on appeal is to
> determine only whether a genuine issue of material fact exists
> and whether the law was correctly applied.

*Citibank (S.D.), N.A. v. Hauff*, 2003 S.D. 99, ¶ 10, 668 N.W.2d 528, 532 (quoting

*Braun v. New Hope Twp.*, 2002 S.D. 67, ¶ 8, 646 N.W.2d 737, 739).

[¶16.]     We review contract interpretation de novo.  *Charlson v. Charlson*, 2017

S.D. 11, ¶ 16, 892 N.W.2d 903, 907.  "When interpreting a contract, this Court looks

to the language that the parties used in the contract to determine their intention."

*Id.* ¶ 16, 892 N.W.2d at 908 (citation omitted).  "In order to ascertain the terms and

conditions of a contract, we examine the contract as a whole and give words their

plain and ordinary meaning."  *Id.* (citation omitted).

[¶17.]     The Lease gave McCoy a right of first refusal to purchase the Leased

Premises at "the same price and on the same terms" of a bona fide offer accepted by

McCallum. A right of first refusal is "a conditional right that ripens into an enforceable option contract when the owner receives a third-party offer to purchase or lease the property subject to the right and manifests an intention to sell or lease on those terms." *Laska v. Barr*, 2016 S.D. 13, ¶ 6, 876 N.W.2d 50, 53 (citation and internal quotation marks omitted). An offer "is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1981). Bona fide is defined as "done or made in good faith" or "authentic or genuine." *The American Heritage Dictionary* (2d ed. 1985); *see also Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 805 N.E.2d 957, 963 (Mass. 2004) ("A third-party offer is bona fide if it was made 'honestly and with serious intent[.]'" (citation omitted)).

[¶18.] McCoy did not claim that DLP's offer was not genuine or not made honestly and with serious intent. Instead, McCoy contends that there was no bona fide offer because the inspection contingencies in the offer made the price indefinite. She notes that DLP was entitled to renegotiate the purchase agreement based on the inspector's email reporting various concerns with the building. Further, McCoy argues the DLP offer was not bona fide because McCallum initially withheld DLP's identity.

[¶19.] Initially, McCallum was reluctant to provide McCoy with the prospective buyer's name over concerns that McCoy would attempt to interfere with the purchase. The record establishes that McCoy authorized McCallum to redact the purchaser's name before forwarding a copy of the purchase agreement.

[¶20.]    The Lease between these parties did not specify that an offer must be unconditional to be considered bona fide. *See Mucci v. Brockton Bocce Club, Inc.*, 472 N.E.2d 966, 968 (Mass. App. Ct. 1985) (offer was bona fide even though conditioned on buyer's ability to obtain financing and licensing). "Conditions of this type are certainly not uncommon in agreements for the sale of commercial real estate. Their presence, apart from anything else, does not prevent a finding that the agreements were entered into honestly and with serious intent." *Id.* Similarly, the price component of a purchase agreement does not become indefinite merely because the purchase agreement is conditioned on a satisfactory inspection. *See ABCDW LLC v. Banning*, 388 P.3d 821, 833 (Ariz. Ct. App. 2016) (rejecting an argument that an "offer was not a bona fide offer because it was indefinite as to price; specifically, the Lease permitted the parties to renegotiate the price per acre in the event the alfalfa was destroyed"). Inspection clauses are common in real estate purchase agreements. This purchase agreement permitted the parties to renegotiate if the inspection revealed problems. It was undisputed that there was no renegotiation of the purchase agreement after completing DLP's inspection. There was no uncertainty on price, and both McCallum and DLP stood ready to close the sale. The circuit court correctly determined that the DLP offer was a "bona fide offer" under the terms of the right of first refusal.

> **2.    Whether the circuit court erred when it determined that McCoy had not exercised her right of first refusal.**

[¶21.]    McCoy contends that she was not offered the same opportunity to purchase the Leased Premises at the same price and on the same terms as DLP

because she was required to make a cash purchase and was not allowed the same contingencies. Additionally, McCoy challenges the adequacy of the notice she received, claiming it omitted material terms found in the offer.

[¶22.] "Adequate notice is notice sufficient to enable the holder of the right of first refusal (the right-holder) to decide whether to attempt to match the terms." *Roeland v. Trucano*, 214 P.3d 343, 348 (Alaska 2009). "Most courts that have considered the issue have adopted the rule that adequacy of notice of a proposed sale to a right of first refusal holder is sufficient if it provides actual notice of a potential sale and sufficient information for the right-holder to determine if he or she is interested in exercising the right." *Id.*

[¶23.] "When the agreement is silent as to notice, however, most courts agree that any method that gives the right-holder notice of a potential sale and reasonably discloses the terms of the sale is sufficient to trigger the right of first refusal." *Dyrdal v. Golden Nuggets, Inc.*, 672 N.W.2d 578, 584 (Minn. Ct. App. 2003), *aff'd*, 689 N.W.2d 779 (Minn. 2004). "In most cases, a copy of the purchase agreement provides reasonable notice of a bona fide offer, even if the agreement does not disclose all of the terms of the sale." *Id.*

[¶24.] McCoy first received notice of the existence of the $840,000 offer on October 6, 2020. On October 18, 2020, McCoy received a copy of the purchase agreement (with the buyer's name redacted). Consequently, it is undisputed that she knew the exact terms she needed to match to exercise her right of first refusal and that neither of her two offers met the DLP offer. The circuit court did not err

when it determined that McCoy had been provided the opportunity to exercise her right of first refusal and had not done so.[2]

### 3. Whether the circuit court abused its discretion when it granted McCallum's motion to expunge the notice of lis pendens.

[¶25.] McCoy argues that the circuit court erred when it granted McCallum's motion to expunge the notice of lis pendens. In their reply brief, McCoy concedes that the disposition of the lis pendens issue follows the disposition of the right of first refusal. Consequently, it is unnecessary to address this issue.

## Conclusion

[¶26.] We affirm the circuit court's entry of summary judgment in favor of McCallum on Count III of McCoy's complaint, determining that McCallum received a bona fide offer to purchase from DLP and that McCoy was given the same opportunity to purchase the Leased Premises at the same price and on the same terms as DLP and failed to exercise the option to purchase. We remand the case to the circuit court for further proceedings on the remaining claims in the complaint and counterclaim.

[¶27.] JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.

---

2. McCoy further argues in this appeal that "[t]he circuit court failed to acknowledge or consider that the lease did not contain a timeframe for [McCoy] to exercise the right of first refusal." In McCoy's view, it was an error of law for the circuit court to accept the deadline unilaterally imposed by McCallum. McCoy did not present this argument to the circuit court. Because the question of the reasonableness of the deadline was not before the circuit court, this Court will not examine it on appeal. *See Wyman v. Bruckner*, 2018 S.D. 17, ¶ 16, 908 N.W.2d 170, 176 (noting the general rule that, even on summary judgment, "this Court may not review theories argued for the first time on appeal" (citation and internal quotation marks omitted)).