#29989-aff in pt & rev in pt-JMK
**2023 S.D. 14**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JOHN NELSON,                                Plaintiff and Appellant,

v.

ESTATE OF GORDON CAMPBELL,                  Defendant, Third-Party
                                            Plaintiff, and Appellee,

v.

REDWATER GRAZING ASSOCIATION,
INC., a South Dakota Cooperative Grazing
District,                                   Third-Party Defendant, Fourth-
                                            Party Plaintiff, and Appellant,

v.

JARED CAPP,                                 Fourth-Party Defendant and
                                            Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
BUTTE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MICHAEL W. DAY
Judge

* * * *

CONSIDERED ON BRIEFS
JANUARY 9, 2023
OPINION FILED **03/15/23**

\* \* \* \*

DAVID L. CLAGGETT of
Claggett & Dill, Prof. LLC
Spearfish, South Dakota

Attorneys for appelants John
Nelson and Redwater Grazing
Association.


ROGER A. TELLINGHUISEN
NATHAN R. CHICOINE of
DeMersseman, Jensen, Tellinghuisen
    & Huffman, LLP
Rapid City, South Dakota

Attorneys for appellee Estate of
Gordon Campbell.


KELLEN B. WILLERT of
Bennett, Main, Gubbrud
    & Willert, P.C.
Belle Fourche, South Dakota

ERIC DAVIS of
Nelson Law
Sturgis, South Dakota

Attorneys for appellee Jared
Capp.

#29989

KERN, Justice

[¶1.]    The Estate of Gordon Campbell (Estate) sought to withdraw real property from the Redwater Grazing Association (Redwater), a cooperative grazing association, previously formed by several members, including Campbell, who had contributed property to Redwater. Another member of Redwater, John Nelson, asserted that the Estate was not authorized to remove the land from Redwater. Alternatively, he claimed that he had entered into a contract with the Estate to purchase the land from the Estate. Nelson and Redwater both filed various claims and counterclaims against the Estate and against Jared Capp, another party seeking to purchase the land from the Estate. The circuit court granted specific performance to the Estate, requiring Redwater to deliver the deed for the property to the Estate. The court also granted summary judgment against Nelson and Redwater and dismissed the remaining claims. Nelson and Redwater appeal.[1] We affirm in part, reverse in part, and remand.

## Facts and Procedural History

[¶2.]    Redwater Grazing Association, Inc. is incorporated as a cooperative grazing association under SDCL chapter 40-23. Campbell, Nelson, and Richard Marsh, as founding members of the corporation, each contributed land to Redwater in 2010. Campbell contributed two parcels of land totaling approximately 53 acres. Redwater filed articles of incorporation and later adopted governing bylaws.

[¶3.]    Campbell passed away in 2017. After his death, his Estate sought to withdraw the property contributed by him from Redwater pursuant to a provision

_____

1.    Nelson and Redwater have been represented by the same attorney throughout the prior proceedings and on appeal.

-1-

in the bylaws which allowed any member to withdraw his or her property from Redwater upon 30 days written notice provided that the member had paid all charges due to Redwater.

[¶4.] Prior to attempting to withdraw the property, the Estate began the process of selling the property by soliciting bids from only Nelson and Jared Capp. Nelson submitted an initial bid of $249,100, and Capp submitted a bid of $260,000. In a letter dated February 14, 2018, the Estate informed both parties that it was rejecting their first offers and beginning a new round of bidding to end on February 21, with an asking price of $283,000 and a provision that "[i]f the high bidder's deal falls through for any reason, the second highest bid will be accepted if: it meets the above conditions, is above appraised price and within $100/acre of the winning bid." The letter to the parties also indicated that the Estate reserved the right to sell the property to the general public if an agreement could not be reached.

[¶5.] The Estate received an offer of $301,000 from Nelson and an offer of $284,000 from Capp. The Estate sent another letter on March 26 informing both parties that it would be taking offers for a final time. The letter notified the parties that this process was not an auction and stated that the Estate "reserve[d] its unequivocal right to sell this property to whomever it chooses, and in any manner of offering it chooses." Additionally, this time, in order to make a bid, the bidders were required to sign a release stating that they discharged any and all claims against the Estate. Nelson did not make another offer, but Capp made a third offer of $400,000, which the Estate accepted.

[¶6.] When the Estate sought the deed for the property from Redwater in order to convey the property to Capp, Redwater refused to turn over the deed and Nelson filed a complaint against the Estate.[2] Nelson's central claim was for specific performance of what he viewed to be a binding contract with the Estate to sell the property to him resulting from the second round of bids. He also asserted claims for breach of contract and unjust enrichment. The Estate filed counterclaims against Nelson for tortious interference with contract and slander of title.

[¶7.] The Estate then filed a third-party complaint against Redwater seeking specific performance for the withdrawal of the property from Redwater and the issuance of the deed to the property. In addition, the Estate asserted claims for breach of contract and tortious interference with a contract. Redwater filed a counterclaim against the Estate seeking a declaration that any deed issued should be delivered to Nelson. Further, Redwater filed a claim for tortious interference with a business relationship.

[¶8.] Redwater also filed a fourth-party complaint against Capp, seeking a declaration that Capp was not entitled to the deed, but rather that the deed should be issued to Nelson, and charging Capp with tortious interference with a business relationship. Capp counterclaimed against Redwater for interference with a contractual relationship and breach of contract, while also seeking a declaratory

---

2. Nelson's complaint began litigation involving what was aptly described as "a profusion of counterclaims, cross claims, and third- and fourth-party claims[.]" *Nelson v. Estate of Campbell*, 2021 S.D. 47, ¶ 8, 963 N.W.2d 560, 564.

judgment that Redwater was obligated to return the property to the Estate pursuant to Redwater's bylaws.

[¶9.] Finally, Nelson filed a cross-complaint against Capp for a declaratory judgment that Capp was not entitled to a deed to the property and that the deed should be issued to Nelson. He also asserted claims against Capp for tortious interference with a contractual relationship, tortious interference with an agricultural lease, and claim and delivery for some personal property that was located on the disputed property. Capp responded with counterclaims against Nelson for conversion, interference with a contractual relationship, unjust enrichment, waste, and breach of a fiduciary duty.

[¶10.] The Estate filed a motion for summary judgment against Redwater on the Estate's claims for specific performance and breach of contract. After a hearing on the matter, the circuit court entered an order dated September 9, 2019, holding that there was neither an express nor an implied contract between the Estate and Nelson to sell the property to Nelson. However, the court also concluded that pursuant to Redwater's bylaws, members of Redwater had a right of first refusal on the sale of any membership grazing rights based on the relevant bylaw which states:

> Section 1. A Member may sell, permanently transfer, give or assign any or all Membership rights to another family farmer who is qualified for membership under the provisions of Article XII subject to prior written approval of the Association. However, Membership grazing rights must first be offered to one or more existing Members. If no Member desires to purchase the available Membership grazing rights they may then be transferred to qualified third parties. The right of first refusal vested in current members shall apply only in situations of proposed sale, assignment or transfer to unrelated third parties.

> The first right of first refusal provided herein shall not apply to intra-family or intra-family farm corporation transfers, sales, assignments or gifts.

The circuit court held that the Estate was required to offer all existing members of Redwater the opportunity to purchase such rights before it could convey the property.

[¶11.]     The Estate then filed a motion asking the court to reconsider its order or, in the alternative, to direct an entry of final judgment on its third-party complaint pursuant to Rule 54(b)[3] so that it could be appealed while the rest of the action was pending. In its brief to the court, the Estate emphasized that rather than selling its membership interest in Redwater, it was seeking to withdraw the property from Redwater that Campbell had previously contributed. A hearing on that and several additional motions was held on October 21. The circuit court, in a decision dated December 26, 2019, held that the Estate had a right to withdraw from Redwater and that its earlier ruling on September 9, 2019, was based on the portion of the bylaws dealing with the sale of membership interests rather than the withdrawal of the property itself. The court revised its earlier decision and granted specific performance requiring Redwater to "perform its obligations under the By-Laws and deliver the deeds to the Estate." The court also granted the Estate's motion for Rule 54(b) certification. Additionally, the court granted summary judgment in favor of Capp, dismissing all of Nelson's claims against Capp, and

---

3.     Under SDCL 15-6-54(b), "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

granted summary judgment to the Estate, dismissing all of Redwater's counterclaims.

[¶12.]     After the December 26, 2019 ruling, Nelson and Redwater appealed because the circuit court had certified its decision as final under SDCL 15-6-54(b).[4] This Court, in a written opinion, dismissed the appeal, holding that there was no appellate jurisdiction because the justification for the Rule 54(b) certification was not readily apparent from the record and there were outstanding claims pending, including "allegations by the Estate and Capp of wrongful interference with a contract against Nelson and Redwater, the Estate's slander of title claim, and Capp's claim for waste, conversion, and breach of fiduciary duty against Nelson." *Nelson*, 2021 S.D. 47, ¶ 33, 963 N.W.2d at 570.

[¶13.]     After the case was remanded to the circuit court, the Estate sought voluntary dismissal of their remaining claims against Nelson and Redwater. The Estate also filed a motion to bifurcate the remaining claims involving Capp pursuant to SDCL 15-6-42(b). The court granted the motion to bifurcate on October 7, 2021 and granted the motions to dismiss the claims against Nelson and Redwater in an amended judgment filed November 8, 2021. These orders resolved the claims between the Estate, Nelson, and Redwater and bifurcated all of the claims involving Capp, directing that they be subject to separate trials. These claims include Redwater's fourth-party complaint against Capp and Capp's counterclaims against Nelson and Redwater. The circuit court also issued an order on December 13 to

---

4.     In addition to filing the appeal, on February 4, 2020, Nelson and Redwater's attorney deposited with the circuit court clerk a quit claim deed for the property and a certificate of discharge of lis pendens.

release the deed for the property to the Estate and to discharge the lis pendens filed against the property.

[¶14.] Dissatisfied with this resolution, Nelson and Redwater again appealed to this Court. We dismissed the appeal by order stating "the amended judgment filed on November 8, 2021, is not a final judgment from which there would be an appeal of right under SDCL 15-26A-3(1), and further, to the extent appellants seek to appeal the November 8, 2021 order under any of the other sections of SDCL 15-26A-3, appellant's notice of appeal was untimely[.]"

[¶15.] Next, Capp filed motions to dismiss his remaining claims against Nelson and Redwater and a motion for summary judgment on Redwater's remaining claims against him. After a hearing on the motions on April 27, 2022, the circuit court granted both motions in an order dated April 28. This left no outstanding claims between any of the parties. Nelson and Redwater now appeal, raising several issues which we restate as follows:

> 1. Whether the circuit court abused its discretion in granting the Estate's claim for specific performance requiring Redwater to deliver the deed for the property to the Estate.
>
> 2. Whether the circuit court erred in granting summary judgment to the Estate on Nelson and Redwater's claims having concluded there was no contract between the Estate and Nelson to sell the property to Nelson.
>
> 3. Whether the circuit court erred in granting summary judgment to the Estate thereby dismissing Nelson's action for claim and delivery of personal property.

The Estate also raises the issue of appellate jurisdiction, which we analyze first.

## Analysis

### *Appellate Jurisdiction*

[¶16.]     "Our authority to review civil judgments and orders is described in SDCL 15-26A-3." *Huls v. Meyer*, 2020 S.D. 24, ¶ 14, 943 N.W.2d 340, 343.  Such appellate jurisdiction "is generally limited to a review of final judgments." *MGA Ins. Co. v. Goodsell*, 2005 S.D. 118, ¶ 33, 707 N.W.2d 483, 489 (Zinter, J., concurring), *quoted in Huls*, 2020 S.D. 24, ¶ 14, 943 N.W.2d at 344.  In determining whether a decision is final and appealable, "we examine the substance of the circuit court's order over its designation to determine whether the order 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Huls*, 2020 S.D. 24, ¶ 14, 943 N.W.2d at 344 (quoting *Knecht v. Evridge*, 2020 S.D. 9, ¶ 42, 940 N.W.2d 318, 331).  "When a circuit court's ruling does not determine the claims of *all parties* in an action, 'the ruling was not appealable as a matter of right unless the circuit court determined that there was no just cause for delay and directed entry of a final judgment [pursuant to SDCL 15-6-54(b)].'" *Goens v. FDT, LLC*, 2022 S.D. 71, ¶ 4, 982 N.W.2d 415, 417–18 (emphasis added) (alteration in original) (quoting *Weisser v. Jackson Twp. of Charles Mix Cnty.*, 2009 S.D. 43, ¶ 2, 767 N.W.2d 888, 889).

[¶17.]     The Estate asserts that the November 8, 2021 amended judgment left no remaining claims involving the Estate, and any remaining claims were between Capp, Nelson, and Redwater.  It asserts that because the circuit court granted bifurcation, the November 8 judgment was a final judgment regarding any claims involving the Estate.  In the Estate's view, Nelson and Redwater had thirty days

therefrom, per SDCL 15-26A-6, to appeal any claims involving the Estate. Because there was no appeal timely filed within thirty days of November 8, the Estate argues that this Court does not have jurisdiction to hear this case.

[¶18.] SDCL 15-6-42(b) allows "[t]he court, in furtherance of convenience or to avoid prejudice" to conduct separate trials "of any number of claims, cross-claims, counterclaims, third-party claims, or issues[.]" While the claims involving the Estate were resolved by the November 8 judgment, the claims of *all parties* in the action were not yet decided. The bifurcation did not separate the claims into separate cases, but rather separated the claims for trial in furtherance of convenience or to avoid prejudice. All claims were still part of the same overall action. Because the claims of all parties were not yet resolved when bifurcation was granted, the case was not yet appealable as a final judgment. The April 28, 2022 order resolved all remaining claims rendering the judgment final and appealable. Nelson and Redwater's appeal, having been timely filed, is properly before this Court.

> **1.  *Whether the circuit court abused its discretion in granting the Estate's claim for specific performance requiring Redwater to deliver the deed for the property to the Estate.***

[¶19.] "Specific performance is an equitable remedy and this [C]ourt's standard of review addresses whether there has been an abuse of discretion by the circuit court after reviewing the facts and circumstances of each case." *In re Estate of Smeenk*, 2022 S.D. 41, ¶ 34, 978 N.W.2d 383, 394 (alteration in original) (quoting *Johnson v. Sellers*, 2011 S.D. 24, ¶ 21, 798 N.W.2d 690, 696). "[A]n essential element to equitable relief is the lack of an adequate remedy at law." *McCollam v.*

*Cahill*, 2009 S.D. 34, ¶ 15, 766 N.W.2d 171, 176 (quoting *Rindal v. Sohler*, 2003 S.D. 24, ¶ 12, 658 N.W.2d 769, 772). "The presumed remedy for the breach of an agreement to transfer real property is specific performance." *Id.* (quoting *Wiggins v. Shewmake*, 374 N.W.2d 111, 115 (S.D. 1985) (citing SDCL 21-9-9)). The circuit court's conclusions of law are reviewed de novo. *Smeenk*, 2022 S.D. 41, ¶ 15, 978 N.W.2d at 388.

[¶20.] Nelson and Redwater assert that pursuant to Redwater's articles of incorporation and bylaws, Redwater's members have a right of first refusal to purchase the stock owned by the Estate before it is sold to a third party. They point to Article VII of Redwater's articles of incorporation, which states: "all stock issued shall be subject to a first option of repurchase in the corporation in event of sale at the proposed sale price." Additionally, Article XI, Section 1 of Redwater's bylaws gives other members the right to be offered membership grazing rights before being offered to qualified third parties. Alternatively, Nelson and Redwater assert that pursuant to the bylaws, a unanimous vote of approval is required before the Estate is permitted to remove the land from Redwater. Article XI of the Redwater bylaws, titled "Transfer of Membership Rights" provides in relevant part:

> Section 5. Any member desiring to withdraw from the association shall be entitled, upon 30 days written notice to the association, to receive a deed from the association of the land which that member had previously transferred to the association. A member's right to receive his land pursuant to this section shall be contingent on said member's payment of all charges due from him pursuant to Article XIII.

> Section 6. Any member desiring to withdraw land previously contributed by him to the association, in an amount not to exceed five (5) acres, shall give 10 days notice to the association of his intent to do so, as well as any required legal descriptions

> necessary to accurately describe said parcel. Upon receipt of
> such notice, the corporation shall immediately cause the
> appropriate deed to be prepared and submitted to the requesting
> member for recordation. A unanimous vote of the membership
> of the association shall be required for any removal of land that
> could cause the association's land totals to drop below the
> minimum required for Butte County agricultural status.

The Estate responds that based on the text of Section 5, it has the right to receive the deed to the property at any time as long as it has paid all charges due and owing. It reiterates that the Estate was never seeking to sell stock or membership rights, but rather the land itself; thus, the right of first refusal does not apply. It also contends that a unanimous vote of Redwater's members is only required when a member seeks to remove only a *portion* of their land while still remaining a member of Redwater.

[¶21.]     When called upon to construe bylaws of a corporation, we apply the standard principles for construction and interpretation of contracts. *Mahan v. Avera St. Luke's*, 2001 S.D. 9, ¶ 15, 621 N.W.2d 150, 154. "When interpreting a contract, this Court looks to the language that the parties used in the contract to determine their intention. In order to ascertain the terms and conditions of a contract, we examine the contract as a whole and give words their plain and ordinary meaning." *McCoy v. McCallum as trustee of Sandra K. McCallum Living Trust*, 2022 S.D. 42, ¶ 16, 978 N.W.2d 473, 478 (internal citation and quotation marks omitted). Agreements must "be construed in their entirety giving contextual meaning to each term." *Spiska Eng'g, Inc. v. SPM Thermo-Shield, Inc.*, 2007 S.D. 31, ¶ 21, 730 N.W.2d 638, 645 (quoting *Bunkers v. Jacobson*, 2002 S.D. 135, ¶ 15, 653 N.W.2d 732, 738).

[¶22.] Based on our review of the record, it is apparent that after Campbell's death, the Estate sought to withdraw the property from Redwater in order to sell the property itself, not a stock interest or grazing rights. The Estate's letter to Nelson and Capp seeking bids for the property refers to the "sale of the property." Further, Nelson submitted bids to purchase the property, not stock or grazing interests. Indeed, Nelson's second offer to the Estate specified, "Please consider my offer of $301,000 for the 53.38 acres more or less of *ranch land* on the Redwater, Butte County." (Emphasis added.) Moreover, Nelson's request for specific performance in his complaint sought "delivery of good and merchantable title to the said real property[.]"

[¶23.] Additionally, it is illuminating to compare the differences in the governing provisions for selling grazing rights or stock with the provisions for the sale of land. As per the articles of incorporation and bylaws, only "*Membership grazing rights* must first be offered to one or more existing Members" and "*all stock issued* shall be subject to a first option of repurchase in the corporation[.]" (Emphasis added.) The articles of incorporation and bylaws include this right of first refusal only with respect to the sale of stock and membership grazing interests. The circuit court correctly ruled as such in its revised ruling on December 26, 2019.

[¶24.] Redwater's bylaws do contemplate a vote by the members regarding the withdrawal of previously contributed real estate, but not in circumstances like we confront here where a member is seeking to withdraw all of the previously contributed real estate. In instances where a member seeks to remain a member of Redwater but withdraw a smaller acreage amount not exceeding five acres and the

-12-

reduction would cause Redwater to lose its agricultural land status,[5] Article XI, Section 6 of the bylaws states that the members must unanimously agree to the withdrawal of the smaller parcel. Accordingly, because Section 6 is inapplicable here, the Estate's removal of the property was not subject to a vote by Redwater's members and the circuit court did not err when it granted specific performance directing Redwater to deliver the deed for the property to the Estate.[6]

> **2.** **Whether the circuit court erred in granting summary judgment to the Estate on Nelson and Redwater's claims having concluded there was no contract between the Estate and Nelson to sell the property to Nelson.**

[¶25.] A grant or denial of summary judgment is reviewed de novo. *Davies v. GPHC, LLC*, 2022 S.D. 55, ¶ 17, 980 N.W.2d 251, 258. "In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Id.* (quoting

---

5. According to the parties, to qualify for Butte County agricultural status, the grazing association must contain a minimum of 145 acres.

6. Nelson and Redwater also allege that the circuit court erred when it denied their motion for leave to amend their pleadings. They sought to add breach of contract claims for alleged violations of Redwater's articles of incorporation and its bylaws for failing to give Redwater members the right of first refusal of the transfer of stock. The circuit court denied the motion after concluding that the right of first refusal did not apply to the sale of the land, so the proposed amendment would be futile. *See In re Wintersteen Revocable Trust Agreement*, 2018 S.D. 12, ¶ 11, 907 N.W.2d 785, 789 ("[A] court 'may appropriately deny leave to amend where there are compelling reasons such as . . . futility of the amendment[.]'" (citations and quotation marks omitted)). Because we conclude that the circuit court was correct in its determination that the right of first refusal does not apply to the sale of the land, we agree that amendment of the pleadings would have been futile.

*Ridley v. Sioux Empire Pit Bull Rescue, Inc.*, 2019 S.D. 48, ¶ 11, 932 N.W.2d 576, 580). "We view the evidence most favorably to the nonmoving party and resolve reasonable doubts against the moving party." *Id.* (quoting *Burgi v. East Winds Court, Inc.*, 2022 S.D. 6, ¶ 15, 969 N.W.2d 919, 923).

[¶26.]     In Nelson's view, the Estate made an offer to sell the land through a bidding process. He asserts that whoever submitted the highest bid would be deemed to have accepted the Estate's offer. Nelson contends that he submitted the highest bid, thereby accepting the Estate's offer, which he argues created a valid contract requiring the Estate to sell him the property.

[¶27.]     The Estate responds that it never made such an offer to Nelson, but rather, it merely solicited bids. The Estate further asserts that the bids made by Nelson and Capp were only offers to purchase the land. Because Nelson's offers were never accepted by the Estate, the Estate asserts there is no contract between the parties.

[¶28.]     "The existence of a contract is a question of law." *Harvey v. Reg'l Health Network, Inc.*, 2018 S.D. 3, ¶ 55, 906 N.W.2d 382, 398. The "[e]lements essential to existence of a contract are: (1) Parties capable of contracting; (2) Their consent; (3) A lawful object; and (4) Sufficient cause or consideration." SDCL 53-1-2. Regarding the element of consent, "the creation of a contract requires an offer by one party and an acceptance by the other." *Advanced Recycling Sys., LLC v. Southeast Properties Ltd. P'ship*, 2010 S.D. 70, ¶ 16, 787 N.W.2d 778, 784. "An offer 'is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will

conclude it.'" *McCoy*, 2022 S.D. 42, ¶ 17, 978 N.W.2d at 478 (quoting Restatement (Second) of Contracts § 24 (1981)). "Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." Restatement (Second) of Contracts § 50 (1981). "An acceptance must be absolute and unqualified[.]" SDCL 53-7-3.

[¶29.] The Estate's communications with Nelson could not have been properly construed as an offer that whoever submits the highest bid would be entitled to have the property sold to him or her. Rather, the Estate only made solicitations for offers in the form of bids. The February 14, 2018 correspondence from the Estate to Nelson and Capp stated that it was rejecting all previous offers and that it would be "accepting written offers until Wednesday, February 21[.]" While the letter stated that "the heirs would be willing in good faith to reduce their asking price to . . . $283,000," it is evident from the language of the entire letter that it was merely a solicitation for further offers. The letter was sent to multiple parties and addressed them as "*prospective bidders*." (Emphasis added.) The Estate also indicated that while it "would prefer to deal with this sale without offering to the general public, [it] reserve[d] the right to do so if an agreement can't be reached." The recipient of such a letter would not be reasonably justified in thinking their response to the letter would conclude any agreement between the parties.

[¶30.] Further, Nelson understood his communication with the Estate was an offer to purchase the property at a certain price, as opposed to an acceptance. His letter to the Estate provides, "Please consider my *offer* of $301,000[.]" (Emphasis

added.)  The Estate was free to accept or reject any of the offers to purchase the property and was not required to accept Nelson's offer because, as previously discussed, he did not possess a right of first refusal to purchase the property.

[¶31.]    While neither party asserts that the Estate conducted a public auction for the land, Nelson seems to claim that there was an auction through sealed bidding and that as the high bidder, he entered into a contract.  "An 'auction' is a sale by consecutive bidding, intended to reach the highest price of the article by competition for it."  7 Am. Jur. 2d Auctions and Auctioneers § 1 (2023).  There is no indication that the Estate intended its solicitation to be an auction.  In fact, it expressly reserved the right to deal with the general public if an agreement could not be reached.

[¶32.]    Even if the Estate's process was construed as an auction, the auction would have been with reserve.  An auction can be either "with reserve" or "without reserve."  The distinction is set out in the Uniform Commercial Code (UCC) which, although applying only to the sale of goods, codifies the "prevailing law" in auction sales.  *Biegler v. Kraft*, 924 F. Supp. 2d 1074, 1089 (D.S.D. 2013).  *See also Equitable Life Assur. Soc. of U.S. v. First Nat'l Bank*, 1999 S.D. 144, ¶ 13, 602 N.W.2d 291, 294–95 (applying the UCC provision regarding auctions to a real estate auction).

> In an auction with reserve the auctioneer may withdraw the goods at any time until he announces completion of the sale.  In an auction without reserve, after the auctioneer calls for bids on an article or lot, that article or lot cannot be withdrawn unless no bid is made within a reasonable time.

SDCL 57A-2-328(3). "An auction is presumed to be held 'with reserve' unless there is an express announcement or advertisement to the contrary before the auction takes place." 7 Am Jur. 2d Auctions and Auctioneers § 34 (2023).

> In an "auction with reserve," the placing of the property for sale is an invitation for bids, not an offer to sell, such that each bid constitutes an offer that may be accepted by the seller; bids are accepted on the seller's behalf and a contract is formed when the auctioneer closes the bidding, typically by the fall of the hammer or other method that notifies the high bidder that the bid has been accepted.

*Id.*

[¶33.] Here, there was no indication that the auction was one without reserve, so if it was an auction, it was an auction with reserve and the Estate was not required to accept any of the bids. The Estate never informed Nelson that it was accepting his offer to purchase the property at his stated price, so there was never a contract to sell Nelson the land.

[¶34.] Because the Estate did not accept Nelson's offer, there was no consent between the parties and no enforceable contract between Nelson and the Estate. The circuit court did not err in failing to find a valid contract for the sale of the property between Nelson and the Estate. We affirm the circuit court's summary judgment rulings based on the absence of a valid contract between Nelson and the Estate.

> **3. Whether the circuit court erred in granting summary judgment to the Estate thereby dismissing Nelson's action for claim and delivery of personal property.**

[¶35.] Nelson's cross-complaint against Capp includes an action for claim and delivery. In support of his claim, Nelson presented an affidavit averring that he

-17-

purchased in cash certain items of personal property from Campbell including a steel staircase, stone steps, a cast iron lamppost, and timber. The affidavit stated that because he had leased the land in question for many years, Nelson left the items on the property until his negotiations with the Estate were unsuccessful. He then removed the staircase, steps, and light pole from the property, but soon after returned the items after Capp informed the Butte County Sheriff's Office that Nelson had stolen the property. Nelson stated in his affidavit that after the Estate and Capp accused him of stealing the items, he gave a signed statement to the Butte County Sheriff explaining "Some years ago I was to purchase a steel staircase with railing + steps for $1500[.] [A]t that time I was to also purchase a steel lamp post for $150." He further explained that use of the phrase "I was to" was a manner of speech he frequently used and here meant that he had already purchased the property.

[¶36.] The circuit court, relying on the statute of frauds as codified in SDCL 53-8-2, granted summary judgment to Capp, dismissing this claim. SDCL 53-8-2 provides in relevant part:

> The following contracts are not enforceable by action unless the contract or some memorandum thereof is in writing and subscribed by the party to be charged or his agent, as authorized in writing:
> (1) An agreement that by its terms is not to be performed within a year from the making thereof[.]

[¶37.] The circuit court concluded that Nelson's admission to the sheriff proved that any such agreement to sell the property "was not to be performed within a year, which makes the Statute of Frauds applicable." The court's ruling, however, was based on an incorrect interpretation of the statute of frauds because,

"an oral contract that *could* be performed within one year is not within the statute." *Knigge v. B & L Food Stores, Inc.*, 2017 S.D. 4, ¶ 9, 890 N.W.2d 570, 573. If Nelson and Campbell had a contract to sell the property in question, the act of selling the property could be performed within one year. Therefore, regardless of whether the sale actually happened within one year, the contract was not required to be in writing under the statute of frauds to be enforceable.[7]

[¶38.] When viewing the facts in the light most favorable to Nelson, as is required in summary judgment proceedings, we conclude that the circuit court erred by determining that there were no material facts in dispute regarding this claim. Nelson's affidavit indicated that he had previously purchased the items from Campbell in cash. Therefore, we conclude that the circuit court erred by granting summary judgment to Capp on Nelson's claim against him for claim and delivery of personal property. Accordingly, we reverse and remand this issue for further proceedings.

[¶39.] JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.

---

7.     The UCC's statute of frauds found in SDCL 57A-2-201 applies to contracts for the sale of goods more than five hundred dollars and requires a writing signed by the party against whom enforcement is sought for the contract to be enforceable. However, there are exceptions to this statute found in SDCL 57A-2-201(3)(c), including "[w]ith respect to goods for which payment has been made and accepted or which have been received and accepted[.]" The facts in the record, when viewed in the light most favorable to Nelson, are enough to meet one or both of the exceptions in subsection (3) and therefore would also preclude summary judgment on the basis of the UCC statute of frauds.